GEORGE G. STILLMAN et al., Appellees, v. SLIFER SAVINGS BANK et al., Appellants.

No. 41795.

JUNE 20, 1933.

REHEARING DENIED OCTOBER 28, 1933.

Maher & Mullen, for appellants.

D. M. Kelleher, for appellees.

DONEGAN, J.—The plaintiffs, George G. Stillman and Lily Stillman, were the owners of a 480-acre farm situated near the town

of Slifer, in Webster county, Iowa. This farm was incumbered by three mortgages. The first and second mortgages were in favor of the defendant Slifer Savings Bank, of which the defendant Oscar Madson was the cashier, and the third mortgage was in favor of the defendant Harry J. Madson. These mortgages were foreclosed, and, after decrees had been entered, but before issuance of executions, negotiations began between the plaintiff George G. Stillman and the defendant Oscar Madson in reference to the plaintiffs herein executing a deed to the land in return for cancellation of the judgments obtained upon the notes and mortgages and the leasing of the land to the plaintiff George G. Stillman. About three or four weeks after these negotiations began the plaintiffs and the defendant Oscar Madson and one Ducharme, who was cashier of the Gowrie Savings Bank, met at the last-named bank on the evening of October 22, 1931, for the purpose of trying to complete a settlement.

Of the 480 acres comprising the Stillman farm, 240 acres were situated on the north side of a public highway, and the remaining 240 acres upon which the house and buildings were located were south of such highway. At the time of the meeting at the Gowrie Savings Bank, the negotiations had progressed to the point where it was practically agreed by the parties that the plaintiffs would execute a deed to the 480 acres to the defendant Harry J. Madson; that the judgments obtained upon the three notes and mortgages upon which the decree of foreclosure had been entered would be canceled; and that the farm would be leased by Harry J. Madson to the plaintiff George G. Stillman. Apparently, the only point upon which they did not agree was as to the term of the lease of the land. The plaintiff George G. Stillman wanted a lease for two years, while the defendant Oscar Madson objected to a lease for two years, because, as he claimed, the bank desired to sell the land as soon as possible.

The negotiations appear to have been conducted in a friendly spirit, and, on the evening of October 22, 1931, the plaintiffs rode from their home near Slifer to the Gowrie Savings Bank along with the defendant Oscar Madson. The necessary papers to complete the proposed transaction had all been prepared by said Madson and were brought by him to the meeting. Among these papers were a deed to the 480 acres of land to be executed by the plaintiffs to Harry J. Madson, and a duplicate lease, which had already been executed by Harry J. Madson, leasing the 480 acres of land to the

plaintiff George G. Stillman. The lease was for the term March 1, 1932, to March 1, 1933, and contained a provision stating that "this lease to be renewed if satisfactory to both parties." The plaintiff George G. Stillman objected to this provision. Thereupon further discussion ensued as to the terms of the lease. Plaintiffs contend that it was finally agreed that the provision in regard to renewal above quoted should be stricken, and that the plaintiffs were to be given a lease for the full 480 acres for two years beginning March 1, 1932, with the provision that, if the north 240 acres should be sold and possession required March 1, 1933, the plaintiffs' lease would cover merely the south 240 acres of the land during the second year. Defendant Oscar Madson contends that he offered to make the lease for one year on all the land and to provide that it should be renewed for the second year as to any of the land that was not sold. The provision in regard to renewal was stricken out and the defendant Oscar Madson went to an adjoining room in which there was a typewriter and added a provision on the back of the lease which is as follows:

"Privilege is hereby granted to party of the second part to renew this lease for another year as to such part of this land that is not sold by the said party of the first part, and the terms to be the same."

Upon Madson's return to the room in which the Stillmans and Ducharme were seated, the deed was signed by the plaintiffs and the lease was signed by the plaintiff George G. Stillman; it having already been signed by the defendant Harry J. Madson. A short time thereafter, the defendants sold the south 240 acres of the land. Upon plaintiffs learning of this sale and that defendants would demand possession on March 1, 1933, this action was instituted.

In their petition plaintiffs allege that the conveyance by plaintiffs to defendant of the land in question was expressly agreed to be upon the consideration of the execution of a lease to plaintiff for the full term of two years, with the qualification that, in the event the north 240 acres should be sold and delivery of possession required by March 1, 1933, the lease would be limited to the south 240 acres of said land for the second year; that said lease as written failed to conform to the preliminary agreement and understanding of the parties; that the language contained in said lease was inserted either through mutual mistake or through fraud upon the

part of the defendants and the mistake of the plaintiffs, and that the plaintiffs were misled by the device adopted by the defendants to procure their signature to said lease; and the plaintiffs ask that said lease be reformed; that the words, "Privilege is hereby granted to party of the second part to renew this lease for another year as to such part of this land as is not sold by the said party of the first part, and the terms to be the same," upon the reverse side of said lease, be stricken out; and that there be inserted in place thereof the words substantially as follows:

"If the North 240 acres of the leased tract shall be sold and possession be required to be delivered to the purchaser by March 1, 1933, then the subject of this lease for the second year shall be only the South 240 acres of said tract."

For answer, the defendants deny that there was any agreement to lease the premises to plaintiff other than as contained in the written lease, and deny that they orally or in any other way agreed that the plaintiffs should have the possession of said land for a period of two years. Trial was had to the court resulting in a decree for the plaintiffs which ordered the lease to be reformed as prayed in plaintiffs' petition. From this decree the defendants appeal.

This case being triable de novo in this court, the burden is upon the appellees, plaintiffs in the lower court, to establish their right to the relief asked. This relief was asked by appellees and granted by the lower court on the alternative ground that the clause which was inserted upon the back of the lease was thus inserted either through mutual mistake, or through fraud upon the part of the defendants and mistake of the plaintiffs. Regardless of whether reformation be asked on the ground of mutual mistake, or upon the ground of fraud on the part of one and mistake on the part of the other, it can only be granted to make the instrument express an actual agreement reached by the parties and which the instrument has failed to express. In Heard v. Nancolas, 187 Iowa 1045, 175 N. W. 13, 16, we said:

"Before a court of equity will undertake to reform a written instrument, so as to make it express a contract other than as expressed in the instrument, it must clearly appear that the minds of the contracting parties did not meet upon the proposition therein expressed. It must appear that the actual contract made between the parties was other and different from that expressed in the writ-

ing. While courts of equity assume this jurisdiction, and the right to reform written evidence of a contract, they do so only when the evidence discloses that the contract was other and different from that expressed in the writing, and that the writing came through fraud or mistake, and does not express the real contract between the parties."

See, also, Rankin v. Taylor, 204 Iowa 384, 214 N. W. 725; Coleman v. Coleman, 153 Iowa 543, 133 N. W. 755. The burden is upon the party seeking reformation to establish his right thereto, and, in order to sustain such burden, his evidence must be clear, satisfactory, and convincing.

The evidence upon which this court must reach its decision in this case consists almost entirely of the testimony of appellees, of Ducharme, the cashier of the Gowrie Bank, who was present at the time the instruments were executed, and of the defendant Oscar Madson. Prior to the meeting at the Gowrie Savings Bank, when the lease and deed were executed, the only preliminary negotiations so far as the record shows, consisted of conversations between appellee George G. Stillman and the defendant Oscar Madson. Stillman claims that the matter was talked over by him and Oscar Madson on several occasions, and that on these occasions Madson expressed his willingness to rent the entire farm to Stillman, but did not want to rent the north 240 acres for more than one year, because the bank desired to sell the land and had some prospective purchasers for the north 240 acres. Madson, on the other hand, claims that the matter was discussed with Stillman on only two occasions prior to the meeting at the Gowrie Savings Bank; that he told Stillman he would not lease the land for the two years, because the bank wanted to sell it; but that, if it was not sold, he would be willing to rent it for the second year. In this connection appellees quote a part of Madson's testimony in regard to a conversation with Stillman in which he says that Stillman said:

" 'You will give me the farm for two years,' and I told him, 'George, as far as I am concerned I suppose we can.' "

This, however, was not a complete statement of what Madson said at that point in his testimony. Immediately following this he proceeded to say:

"And we thought that as this land was in his possession to rent

or sell, we would just as soon rent to him as to any other tenant, and I had that clause that if it was satisfactory to both parties, he was to have it another year."

Mrs. Stillman also stated:

"He (Madson) said before we reached the bank, 'Now, George, you know you are to have the place for two years. We will have the deed, and I will give you the first chance to rent it.' "

Madson's testimony is that at all times prior to the meeting at the Gowrie Savings Bank he had told Stillman that he could not lease the farm to him for two years, but that, if it was not sold, they would be willing to rent it to him for the second year. When they reached the Gowrie Bank, Madson produced the lease which he had prepared. Mr. Stillman objected to the provision which stated that "this lease to be renewed if satisfactory to both parties," on the ground that it did not mean anything, and that it would give him no right to a lease for the second year.

It is quite apparent that the evidence is in conflict as to any definite understanding having been reached by the parties prior to the time they arrived at the Gowrie Savings Bank. The evidence is equally conflicting as to the final terms of any agreement reached by them during the meeting at that bank. Both plaintiffs testify that the matter was discussed at that time. George Stillman testified:

"During the conversation at the bank, it was talked there between the four of us that I was to have the farm for two years with the privilege to make a sale of the North 240 acres at the end of the second year. If I wanted it for another year, I was to rent the farm, and have possession for one year, the whole farm, and if the North half was sold, I was to only rent where I lived the second year. That was referred to more than once during the conversation."

Mrs. Stillman testified:

"We asked them if we signed the deed then we could have the place. He said if we signed the deed, we could expect to have the whole place for the next year if the North 240 was sold. I remember of him saying that. That was before the deed was signed."

Madson, on the other hand, testified:

"When the clause was reached that said that the lease would be renewed for another year if satisfactory to both parties, Mr. Stillman objected to that, and I asked him what kind of a clause he wanted. He said he wanted a straight clause in there to have it for another year. I told him, 'I can't do that as we must sell this land,' and I told him of two prospects that we had for the North 240 acres. Then we talked about that—that these two prospects wouldn't care to buy if Mr. Stillman had a two year lease on it— on the North 240. I said, 'I can't do that. I can't give you that lease for two years, because we must be free to sell this land, but if we didn't sell it, or didn't get a chance to sell the land, I will then give you another year, and we will renew the lease for another year if we don't sell the land.' 'Well,' he said, 'Why can't we put that on the lease?' I said, 'I will put that on.' It had been talked about— they was talking about putting everything in black and white. I asked Mr. Ducharme if he had a typewriter. He said there was one in the other room. I told him, 'Now I am going to insert this clause on the back of this lease, and wasn't asking any more than to interpret it just as we had agreed—that 'we will renew this lease for another year on such part of the land as we don't sell.' That was agreeable."

Emmet Ducharme, the cashier of the Gowrie Bank, who was present at the meeting, testified as a witness for plaintiffs, as follows:

"I didn't hear the Stillmans say anything that night that would lead me to believe that they would have the farm for two years. I only drew that inference. I only had the impression that they were to have the farm for two years if the North 240 was sold. That was one of the demands of the Stillmans in signing away that farm. That place right there is where the shoe pinched. The Stillmans wanted the farm for two years. Mr. Madson didn't consent it might be for two years. Mr. Madson didn't want to give a two-year lease. I don't remember that he gave up the idea that they couldn't have it."

It appears that, after the discussion at the Gowrie Savings Bank, as related in the testimony of the witnesses above quoted, Oscar Madson went to the typewriter and placed upon the back of the lease the provision which reads:

"Privilege is hereby granted to party of the second part to renew this lease for another year as to such part of this land that is

not sold by the said party of the first part, and the terms to be the same."

Madson testifies that, after this provision had been written upon the lease, he believes he read it to the plaintiffs. The plaintiffs deny that they read this provision in the lease or that it was read to them by Madson, while Ducharme stated:

"I don't remember that Oscar Madson said anything after he had come back and stricken out that clause and written something else in it. He just presented the lease for approval. Then Mrs. Stillman raised the question, 'What if you sell the South 240 acres?' and then I made reply, 'That wouldn't hardly be likely, would it, Oscar?' I don't remember what Oscar said."

Both Mr. and Mrs. Stillman testify that, after Madson had written something on the lease with the typewriter, he made the statement to Stillman in substance, "Now George, you have got the farm for two years." Madson denies that any such statement was made to Stillman by him, and Ducharme makes no mention of such statement in his testimony.

The burden was upon the plaintiffs to establish that the writing did not express the real agreement of the parties, and that the failure to express such real agreement was caused either by mutual mistake of the parties or by the mistake of the plaintiffs and fraud of the defendant Madson. The evidence to sustain such burden must amount to more than a mere preponderance. As stated in West v. Hysham, 214 Iowa 349, 242 N. W. 19, 22:

"It was incumbent upon the plaintiff, in order to secure a reformation of the contract, to prove that by mutual mistake or by mistake on his part and fraud on the part of the defendant the writing did not correctly express their actual agreement. The degree of affirmative proof required was not merely a preponderance of the evidence. The evidence 'must be clear, satisfactory, and convincing.' [Citing cases.]"

In Haugh v. Lanz, 187 Iowa 841, 172 N. W. 199, 200, we said:

"It has been said by this court that a contract will not be reformed in equity where neither party intended that any different words should be used than those which were employed. To reform a writing on the ground of mistake, it must appear that there is

a mistake in the writing, and the evidence to show this must be clear, satisfactory, and free from reasonable doubt. More than a mere preponderance of the evidence is required to sustain a decree for the reformation of a written instrument. It has been further said that a court will not disturb the provisions of a written agreement unless there is clear and convincing evidence that the instrument does not set forth the true intent of the parties, and that the failure to make it express such intent arose from oversight or mistake in drafting. The general rule seems to be that the proof necessary must be almost sufficient to establish the right to a reformation beyond a reasonable doubt."

Whatever the understanding or impression of the plaintiffs may have been in regard to the proposed lease, it does not seem to us that the evidence can be said to be clear, strong, satisfactory, and convincing that the defendant Oscar Madson at any time prior to the insertion of the clause in question upon the back of the lease, agreed that the lease would cover the south 240 acres for two years. At the very time that the plaintiffs claim that Madson told George G. Stillman, before reaching the bank on the night of the meeting, that he was to have the farm for two years, Madson had in his possession a lease by the terms of which the farm was leased for one year only, with the provision that the lease could be renewed for the second year if satisfactory to both parties. When this provision of the lease was read and objected to by the plaintiff George G. Stillman, the objection was that it meant nothing, and not that it was contrary to any agreement which had already been reached. While the testimony of the plaintiffs is that, during the discussion at the Gowrie Bank, it was understood and agreed that they were to have the south 240 acres for two years, and that they would have the north 240 acres for one year in any event, and for two years in case it was not sold, the defendant Madson denies that any such understanding or agreement was ever reached, and the plaintiffs' witness, Ducharme, states that:

"That place right there is where the shoe pinched. The Stillmans wanted the farm for two years. Mr. Madson didn't consent it might be for two years. Mr. Madson didn't want to give a two year lease."

Moreover, after the clause which it is now asked be stricken had been inserted upon the back of the lease by Madson, although

the Stillmans insist that the agreement was that they were to have the south 240 acres for two years, Mrs. Stillman asked Madson the question, "What if you sell the south 240 acres?" It is difficult to understand why she would ask this question if, as the plaintiffs contend, the agreement had already been reached that they were to have the south 240 acres for two years and it was their understanding that this provision for two years had been placed in the lease by Madson. It is our opinion that the plaintiffs have failed to sustain the burden of proof imposed upon them and are not entitled to a reformation.

Even if the evidence were otherwise sufficient to justify the court in granting the reformation requested, we feel that such relief could not be given in this case because of the negligence of the plaintiffs in failing to read the provision which they now ask to have reformed. So far as the record in this case shows, there is nothing to excuse the failure of the plaintiffs to know the provision of the lease which was thus inserted. They had been discussing the matter of a two-year lease, and Madson asked Ducharme if he might use the typewriter in order to insert a new provision in the lease; the insertion was made, if not in their presence, at least in an adjoining room. Madson returned to the presence of plaintiffs and Ducharme with the leases containing the insertion. There is no evidence of any attempt to prevent them from reading the provision thus inserted. There is nothing to show that they asked Madson to read it to them or to even tell them the substance of what he had inserted. There is no evidence that he hurried them or diverted their attention or used any artifice or device or was guilty of any violation of any duty which prevented the plaintiffs from reading the clause which was thus inserted or from learning its contents. Under such circumstances, we think there is no question under the authorities but that the plaintiffs were negligent and that their negligence must be a bar to the relief which they seek in this action.

In Merriam v. Leeper, 192 Iowa 587, 185 N. W. 134, 137, we said:

"It is a general rule in equity that a party to a written contract may not escape the obligations thereof by merely showing that he failed to read the same, and therefore failed to discover some of its provisions. He is held presumptively bound to read the contract which he signed unless he can show adequate reason for failing in that regard. If he had the ability and opportunity to read the con-

tract himself, it is not an adequate reason for failure to read that the other party purported to state the contents. He must show that he was in some manner prevented from reading the contract and that the other party was by some artifice or fraudulent connivance instrumental in such prevention or in inducing him to refrain from reading it."

See, also, Houchin v. Auracher, 194 Iowa 606, 190 N. W. 3; Midland Mortgage Co. v. Rice, 197 Iowa 711, 198 N. W. 24; Turnis v. Ballou, 201 Iowa 468, 205 N. W. 746; Galva First National Bank v. Reed, 205 Iowa 7, 215 N. W. 732.

Appellees in their brief and argument contend that, as Lily Stillman did not sign the lease, she cannot be charged with negligence. In view of the fact that the appellees, in our opinion, have failed to sustain the burden of proof imposed upon them in regard to proving mutual mistake or mistake on the part of appellees and fraud on the part of appellants, they would not be entitled to a reformation even if no negligence on their part appeared. Aside from this, however, it seems to us that the appellee Lily Stillman cannot escape the burden of proving that she also was free from negligence. The case of Taylor v. Lindenmann, 211 Iowa 1122, 235 N. W. 310, cited by appellees, does not, in our opinion, support their contention that the appellee Lily Stillman cannot be held to be negligent. The Taylor case was a suit to quiet title. The deed executed by Elizabeth Taylor to her grantee contained a misdescription. The description contained more land than the parties intended. The land actually taken possession of by the grantee under this conveyance, and by subsequent grantees under later conveyances, corresponded with the intention of the parties and not with the description. In the suit to quiet title, some of the subsequent grantees who were defendants endeavored to defeat the claim of Elizabeth Taylor to the excess land contained in the description, but which had never passed out of her possession, on the ground that she was negligent in signing the deed which included this excess land in the description. The court held that she was not a party to any deed or contract involving the land except with the original purchasers from her, and that there was no mutuality of contract between her and subsequent purchasers. In the case at bar, however, Lily Stillman was a party to the transaction in which the lease in question was involved as a part of the consideration. While she did not sign the lease, she was interested in it, because she expected through this

lease with her husband to obtain the right to continue to occupy the land which included her homestead. The giving of the lease to her husband was a part of the same transaction in which she and her husband executed 'the deed. She was present and took part in this transaction, and, if the lease, which was then given to her husband and in which she was interested, did not properly express the actual agreement entered into, we are unable to see any theory upon which she can be said to be relieved from the exercise of due diligence. Under the facts and circumstances of this case, we see no reason why the appellee Lily Stillman should not be held to be negligent as well as her husband.

Appellants in this case filed a motion to strike the brief and argument of appellees on the ground that the appellees, having the burden of proof, failed to file the opening argument within the time provided by law and the rules of this court, and that in such brief and argument they had, contrary to law and the rules of this court, raised questions which were not discussed in the opening argument filed by the appellants. In view of the decision reached, it becomes unnecessary to consider this motion.

For the reasons given, the decree of the trial court will be reversed, and the case will be remanded for further decree in accordance with this opinion.—Reversed and remanded.

KINDIG, C. J., and ALBERT, STEVENS, ANDERSON, and KINTZINGER, JJ., concur.

EVANS, J., dissents.