E. R. REDMOND d/b/a Arcola Food Market, Plaintiff-Appellant,

v.

UNITED STATES of America and United States Department of Agriculture, Defendants-Appellees.

No. 74–1709.

United States Court of Appeals, Fifth Circuit.

Feb. 7, 1975.

Rehearing and Rehearing En Banc Denied March 6, 1975.

Martin A. Kilpatrick, Greenville, Miss., for plaintiff-appellant.

Norman L. Gillespie, Asst. U. S. Atty., H. M. Ray, U. S. Atty., Oxford, Miss., Robert E. Kopp, Richard A. Olderman, Attys., Dept. of Justice, Washington, D. C., for defendants-appellees.

Before COLEMAN, CLARK and RONEY, Circuit Judges.

RONEY, Circuit Judge:

E. R. Redmond, d/b/a Arcola Food Market, brought the instant action in the district court to review a final determination of the United States Department of Agriculture disqualifying Redmond from participating in the federal food stamp program for a period of one year. Redmond was suspended for permitting food stamps to be used to pay for credit sales and to purchase items not justified under the program. Under 7 U.S.C.A. § 2022, a review in the district court shall be " . . . a trial de novo by the court in which the court shall determine the validity of the questioned administrative action in issue." The central question on this appeal involves the nature of this statutory trial de novo and whether the aggrieved food store or the Department of Agriculture has the burden of proof at the trial. The United States District Court for the Northern District of Mississippi held that, under 7 U.S.C.A. § 2022, the aggrieved food store has the burden of establishing the invalidity of the administrative action. Concluding after trial that Redmond had failed to sustain this burden, the district court dismissed his complaint. We affirm.

### The Store

Redmond, a twenty-seven year old, resident of Arcola, Mississippi, is the proprietor of a retail grocery store which he operates under the trade name, "Arcola Food Market." Redmond acquired this business in July, 1969, and, during the same month, the United States Department of Agriculture (USDA) authorized Redmond to participate in the Food Stamp Program which is administered by the Food and Nutrition Service (FNS). Redmond was familiar with this program as he had previously worked in a grocery which was authorized to accept food stamps.

The Arcola Food Market serves the 2000–3000 residents of Arcola, as well as individuals living within an approximate eight to ten mile radius of the town. In 1971, the year in question, over 90 percent of Redmond's customers participated in the Food Stamp Program.

At the Arcola Food Market, Redmond sells groceries, dry goods, hardware, beer and tobacco products. Approximately 75 percent of Redmond's inventory is food; 25 percent is nonfood. Under the Food Stamp Program, Redmond is authorized to redeem stamps for "eligible food." According to Food Stamp Regulations, specifically 7 C.F.R. 270.2(s), "eligible food" means essentially food for human consumption, excluding certain items such as alcoholic beverages and tobacco products.

Redmond offers his customers the opportunity to make purchases on credit although food stamps cannot be used for credit transactions. 7 C.F.R. 272.2(g) provides that

> Coupons shall not be accepted by an authorized retail food store or nonprofit meal delivery service in payment for any eligible foods sold or delivered by such firm prior to the time at which the coupons are tendered in payment for eligible foods.

Redmond keeps no records of credit transactions and is not required by law to do so. Redmond, however, does keep records of gross sales upon which he pays Mississippi state sales tax and federal income tax.

### The Investigation and Administrative Determination

In April of 1971, the officer-in-charge of the Greenwood, Mississippi, field office of FNS, which administers the Food Stamp Program in fifteen Mississippi counties, concluded that an investigation of the Arcola Food Market was warranted. This conclusion was based on the fact that the ratio of food stamp redemption to the store's average monthly food sales exceeded the average redemption ratio of the other stores in the same area. During 1971, USDA representatives made two visits to the Arcola Food Market to discuss the high redemption ratio with Redmond. In February of 1972, FNS sent Redmond a letter telling

him to take "special care" to prevent violations of the food stamp regulations and to review the regulations periodically.

Prompted by a complaint that Redmond had accepted food stamps in payment of credit accounts, a USDA representative revisited the Arcola Food Market on April 14, 1972. At this meeting, the representative learned from Redmond's state sales tax returns that the total gross sales for the Arcola Food Market amounted to $150,693 during 1971. Redmond told the representative that 75 percent of this figure was attributable to food sales and that 30 percent of the food sales was allocable to credit sales. Using simple arithmetic, the representative later determined that, in 1971, $113,019 of Redmond's total sales were food sales (75 percent of $150,693). Of this sum, $33,905 were credit sales (30 percent of $113,019). Thus, the total sales in 1971 eligible for food stamp redemption amounted to $79,114 ($113,019 less $33,905). The USDA records indicated, however, that Redmond had redeemed $100,192 in food stamps during 1971.

On May 9, 1972, FNS sent Redmond a letter stating that FNS had reason to believe that he had violated the provisions of the Food Stamp Act and re-

quested an explanation. Redmond responded that his food stamp redemptions for 1971 were less than $100,192 and submitted his 1971 income tax return, which showed his annual gross sales of $143,-612.73, or $7,000 less than he reported on his Mississippi state sales tax returns.

On September 13, 1972, FNS notified Redmond that he had been disqualified from participation in the Food Stamp Program for a period of one year.

On September 15, 1972, Redmond submitted a written request for review and, on January 24, 1973, Redmond met with a Food Stamp Review Officer. At that meeting, Redmond claimed that he had overstated his 1971 credit sales and that, in fact, such sales amount to less than $25,000. Assuming that credit sales amounted to $25,000 in 1971, Redmond's eligible food sales figure, now $88,019 ($113,019 minus $25,000), was still less than the $100,192 in food stamps which, according to USDA records, Redmond redeemed in 1971. Therefore, the Food Stamp Review Officer concluded that Redmond had accepted food stamps for credit sales in violation of 7 C.F.R. 272.2 and that the one year suspension of Redmond was warranted. Under 7 C.F.R. 273.8,[1] this determination constituted the final order of the agency.

1. 7 C.F.R. 273.8 provides,

(a) The Food Stamp Review Officer shall make a determination based upon:

(1) The information submitted by the Director, Food Stamp Division, FNS;

(2) Information submitted by the firm in support of its position; and

(3) Such additional information, in writing, as may be obtained by such Officer from any other person having relevant information.

(b) In the case of a request for review of a denial of an application to participate in the program, the determination of the Food Stamp Review Officer shall sustain the action under review or shall direct that the firm be approved for participation.

(c) In the case of a request for review of action disqualifying a firm from participation in the program, the determination of the Food Stamp Review Officer shall sustain the action under review or specify a shorter period of disqualification, direct that an official warning letter be issued to

the firm in lieu of any period of disqualification, or direct that no administrative action be taken in the case.

(d) In the case of a request for review of a denial of all or any part of a claim of a firm, the determination of the Food Stamp Review Officer shall sustain the action under review or shall specify the amount of the claim to be paid by FNS.

(e) The Food Stamp Review Officer shall notify the firm of his determination by certified mail. Such notification shall be sent to the representative of the firm who filed the request for review.

(f) The Food Stamp Review Officer shall send a copy of his notification to the firm to the Director, Food Stamp Division, FNS, who shall undertake such action as may be necessary to comply with the determination of such Officer.

(g) The determination of the Food Stamp Review Officer shall take effect 15 days after the date of delivery of such determination to the firm.

*The Trial De Novo*

Pursuant to 7 U.S.C.A. § 2022,[2] Redmond filed the instant suit against the United States and USDA to set aside the administrative action and to stay the period of disqualification pending hearing on the merits. The district court stayed the period of disqualification *pendente lite.*

Prior to trial, the district court ruled that under 7 U.S.C.A. § 2022 Redmond had the burden of proof to establish the invalidity of the administrative action. At trial, Redmond testified that, although he reported gross sales on his 1971 federal income tax return as $143,612 and reported gross sales on his 1971 sales tax return as $150,693, his actual gross sales for 1971 were between $162,000 and $165,000. Redmond also testified that his actual credit sales in 1971 amounted to less than $9,000.

At the conclusion of the evidence, the district court found that Redmond's gross sales for 1971 were $150,693 as he had reported on his Mississippi state sales tax returns. The court further found that 75% of his gross sales were food sales ($113,019) and that 20% of the food sales were sales on credit ($22,604). By subtracting the credit sales from the food sales, the court determined that Redmond's eligible food sales for 1971 totalled $90,415, a figure some $9,777 less than the $100,192 worth of food stamps which Redmond redeemed in 1971. On the basis of these figures, the court concluded that Redmond had failed to prove the invalidity of the agency's determination of disqualification. The court dismissed Redmond's complaint and vacated the stay of the period of disqualification.

On appeal, Redmond argues that the district court committed reversible error

**2.** 7 U.S.C.A. § 2022 reads as follows:

Whenever—

(a) an application of a retail food store or wholesale food concern to participate in the food stamp program is denied,

(b) a retail food store or a wholesale food concern is disqualified under the provisions of section 2020 of this title, or

(c) all or part of any claim of a retail food store or wholesale food concern is denied under the provisions of section 2021 of this title, notice of such administrative action shall be issued to the retail food store or wholesale food concern involved. Such notice shall be delivered by certified mail or personal service. If such store or concern is aggrieved by such action, it may, in accordance with regulations promulgated under this chapter, within ten days of the date of delivery of such notice, file a written request for an opportunity to submit information in support of its position to such person or persons as the regulations may designate. If such a request is not made or if such store or concern fails to submit information in support of its position after filing a request, the administrative determination shall be final. If such a request is made by such store or concern, such information as may be submitted by the store or concern, as well as such other information as may be available, shall be reviewed by the person or persons designated, who shall, subject to the right of *judicial review hereinafter provided, make a* determination which shall be final and which shall take effect fifteen days after the date of the delivery or service of such final notice of determination. If the store or concern feels aggrieved by such final determination he may obtain judicial review thereof by filing a complaint against the United States in the United States district court for the district in which he resides or is engaged in business, or in any court of record of the State having competent juris-*diction, within thirty days after the date of* delivery or service of the final notice of determination upon him, requesting the court to set aside such determination. The copy of the summons and complaint required to be delivered to the official or agency whose order is being attacked shall be sent to the Secretary or such person or persons as he may designate to receive service of process. The suit in the United States district court or State court shall be a trial de novo by the court in which the court shall determine the validity of the questioned administrative action in issue. If the court determines that such administrative action is invalid it shall enter such judgment or order as it determines is in *accordance with the law and the evidence.* During the pendency of such judicial review, or any appeal therefrom, the administrative action under review shall be and remain in full force and effect, unless an application to the court on not less than ten days' notice, and after hearing thereon and a showing of irreparable injury, the court temporarily stays such administrative action pending disposition of such trial or appeal.

by placing the burden of proof on him to establish the invalidity of the administrative action in question. Redmond contends that, in the trial de novo, the agency had to prove the facts necessary to justify its actions. In the alternative, Redmond asserts that he proved by the preponderance of the evidence that the determination of disqualification was invalid. We granted a stay of the enforcement of the period of disqualification pending the final outcome of this cause on appeal.

### Burden of Proof

The Food Stamp Act, specifically 7 U.S.C.A. § 2022, provides for judicial review of the agency's final determination of disqualification:

> If the store or concern feels aggrieved by such final determination he may obtain judicial review thereof by filing a complaint against the United States in the United States district court for the district in which he resides or is engaged in business, or in any court of record of the State having competent jurisdiction, within thirty days after the date of delivery or service of the final notice of determination upon him, requesting the court to set aside such determination. . . . The suit in the United States district court or State court shall be a trial de novo by the court in which the court shall determine the validity of the questioned administrative action in issue.

This language is not common in the federal statutes providing for judicial review of administrative decisions, and hence there is little authority to guide the determination as to just what is supposed to happen in the district court. Redmond cites several cases, both federal and state, which define a trial de novo as a trial anew in which the plaintiff below retains the burden of proving every essential element of a cause of action. Spano v. Western Fruit Growers, 83 F.2d 150 (10th Cir. 1936); Barner v. Boggiano, 32 Tenn.App. 351, 222 S.W.2d 672 (1948); Deshler Broom Factory v.

Kinney, 140 Neb. 889, 2 N.W.2d 332 (1942); Stillman v. Slifer Savings Bank, 216 Iowa 957, 249 N.W. 230 (1933); Krause v. Spurgeon, 221 Mo.App. 26, 297 S.W. 434 (1927). Redmond contends that the USDA is in effect the plaintiff seeking to disqualify him from the Food Stamp Program and that it must prove in court every fact necessary to accomplish this result. In order words, Redmond would have the district court proceed as if no agency action had been taken. Under Redmond's argument, the USDA would carry the burden of proof and, if it failed to prove in the district court those facts necessary to suspend Redmond from the program at the administrative level, the agency action could not stand.

This argument misconstrues the statutory language and the obvious purpose of the legislative scheme devised by Congress for agency action and judicial review. The normal review of administrative determinations under the Administrative Procedures Act requires the application of the substantial evidence test. 5 U.S.C.A. § 706(2)(E). Under the substantial evidence test, a reviewing court is bound by the findings of the administrative agency if those findings are supported by substantial evidence on the administrative record as a whole. Evidence cannot be submitted in the reviewing court and the parties are bound by the evidence in the administrative record. By rejecting the substantial evidence standard of review in the Food Stamp Program and permitting a trial de novo, Congress intended nothing more than that the district court would not be bound by the administrative record. But by requiring the aggrieved store to file a complaint in the district court requesting the court to set aside the agency determination, the Act casts the burden of being the plaintiff on the aggrieved store with all of the usual responsibilities of a plaintiff in obtaining relief from a court, including the burden of proving facts to show that he is entitled to relief. In other words, the agency action stands, unless the plaintiff proves that it should

be set aside. He may offer any relevant evidence available to support his case, whether or not it has been previously submitted to the agency, and the agency itself may offer any evidence available to support its action, whether or not in the administrative record. But unless proven to be invalid, the agency action prevails.

This construction of the judicial review provision of the Act is logically consistent with the statutory methods by which the USDA may initiate disqualification proceedings against a food store and by which the store may resist the proposed disqualification. We have recounted in detail the administrative proceedings in the case at bar to illustrate what occurs at the administrative level prior to judicial review. As we have seen, the preliminary agency action is extensive but neither the Act nor the regulations promulgated thereunder provide for a full adversary hearing or formal record at the administrative level. By according the administrative action in question a presumption of validity, the statute recognizes the initial investigation and determination of the agency. By providing the aggrieved food store with a new trial where the store may introduce evidence outside the administrative record, the statute also protects the rights and interests of the store against final adverse action without the opportunity for an adversary hearing.

■ In ruling that Redmond had the burden of proving the invalidity of the administrative action in question, the district court considered the effect of placing the burden of proof upon the government at the trial de novo. Stating that the aggrieved store under 7 U.S.C.A. § 2022 may not proceed as if agency determination had never occurred, the district court reasoned,

Now, as you come into this Court, as I see it, you are coming in with an administrative record made, but you are not bound by it, you are free to show where it is erroneous. But you are not free to take the position that . . . it is entitled to no weight.

That seems to me to be the only simple construction of these words. Because otherwise you are imputing to Congress a terrible intention—the intention that in the administration of this act, even though the administrators have gone through this procedure and you have had an administrative review, still, all of that means nothing, it really means nothing, it is just simply a roadblock to get to the District Court, where you are going to have a free shot as if nothing ever happened before.

It is an ineptly-worded statute, but it seems to me like the Court cannot say this administrative record is entitled to no weight whatever. It is entitled to some weight. You are free to rebut it, you are free to overcome it, but if you put on no evidence, then the record would be enough to justify the Court in upholding an administrative action.

We agree with the reasoning of the district court and, accordingly, we affirm the decision of the district court that the burden of proof under 7 U.S.C.A. § 2022 is upon the aggrieved food store to establish the invalidity of the administrative action in issue by the preponderance of the evidence. *Accord,* J. L. Saunders, Inc. v. United States, 52 F.R.D. 570 (E.D. Va.1971).

*Evidence*

■ As his second argument on appeal, Redmond asserts that he established, by the preponderance of the evidence, the invalidity of the agency's determination of disqualification. The only evidence which Redmond introduced at the trial before the district court was his own unsubstantiated testimony that his gross sales for 1971 were between $162,000 and $165,000 and that his credit sales for the same year were less than $9,000. These figures were in direct conflict with the figures which Redmond previously had reported to the FNS inspector in April of 1972 and to the Food Stamp Review Officer in January of 1973.

Faced with the obvious inconsistencies in Redmond's several statements, the dis-

trict court found as a matter of fact that Redmond's gross sales for 1971 were $150,693, the amount reflected on his 1971 Mississippi sales tax returns; that his food sales equalled 75% of this figure, or $113,019; and that his credit sales amounted to 20% of his food sales, or $22,604. These findings are supported by substantial evidence, are not clearly erroneous, and contrary to proving the plaintiff's case, furnish ample basis for the suspension of Redmond from the Food Stamp Program. The district court was correct in refusing to set aside the determination of the USDA.

The stay of the period of disqualification pending the outcome of this appeal is vacated.

Affirmed.