Yacoub Ali ABDEL and Salim Hamideh doing business as South Supermarket, Plaintiffs-Appellants,

v.

UNITED STATES of America, Defendant-Appellee.

No. 80–2771.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 17, 1981.

Decided Jan. 4, 1982 *.

Opinion Feb. 9, 1982.

* This appeal was originally decided by unreported order on January 4, 1982. See Circuit Court Rule 35. The court has subsequently decided to issue the decision as an opinion.

Albert Koretzky, Chicago, Ill., for plaintiffs-appellants.

Mary Anne Mason, Asst. U. S. Atty., Dan K. Webb, U. S. Atty., Frederick H. Branding, Asst. U. S. Atty., Chief, Civil Div., Chicago, Ill., for defendant-appellee.

Before CUMMINGS, Chief Judge, and WOOD and CUDAHY, Circuit Judges.

CUDAHY, Circuit Judge.

Plaintiffs-appellants Yacoub Ali Abdel and Salim Hamideh d/b/a South Supermarket ("Supermarket") appeal from a judgment for the Government entered after a bench trial reviewing *de novo* a decision of a Food Stamp Review Officer of the Department of Agriculture which disqualified Supermarket from the Food Stamp Program for six months because it accepted food stamps as payment for non-food items, which were ineligible for purchase with food stamps. Two arguments are presented: (1) that four investigative reports were erroneously admitted in evidence under the "business records" exception to the hearsay rule, Fed.R.Evid. 803(6); and (2) that there was no evidence either that non-food items actually were purchased for food stamps or that Supermarket was given the warning required by law before the imposition on it of a six-month disqualification. For the reasons given below, we affirm.

*Admissibility of the Transaction Reports*

The four Transaction Reports, the admission of which into evidence Supermarket maintains requires reversal, were completed by Herbert A. Thompson, a Compliance Specialist employed by the Department of Agriculture, working with Minnie James, employed part-time by the Department as a Compliance Aide.

During the Department's investigation of Supermarket, Thompson and James visited Supermarket eight times.[1] Each time the procedure was the same. James carried no cash or food stamps of her own. She entered the store with only a specified quantity of food stamps supplied by Thompson, who waited in his automobile while James shopped in the store. James would select food and non-food items and attempt to purchase them with food stamps. After leaving the store, James immediately would take her bag of purchases and the change she had received to Thompson. He would go through the bag with James and record the items purchased on a Transaction Report form, listing the quantity, brand name, description and price of each item purchased. Similar information regarding items which Supermarket had refused to sell to James was also recorded on the form. Eligible and ineligible items were listed separately. The form also included a physical description of the store clerk and a record of the food stamps used in the transaction. James checked the accuracy of each form immediately after it was completed and both James and Thompson signed each form.

A Transaction Report was completed in the above-described manner after each of the eight compliance investigation visits in this case, whether or not ineligible items had been purchased.[2] All eight reports were sent to the Chicago Area Compliance Office, in accordance with regular Department procedures.

The district court admitted the Transaction Reports into evidence under Rule 803(6) of the Federal Rules of Evidence, which codifies the common law "business records" exception to the hearsay rule. McCormick, *Evidence* 720 (2d ed. 1972).[3] Supermarket argues that the reports were prepared to assist in imminent litigation, giving Thompson too great an incentive to misrepresent the facts included on them.[4] Thus, Supermarket maintains that the reports were not sufficiently reliable to be admitted under Rule 803(6).

Prior to the effective date of the Federal Rules of Evidence, in *Hodge v. Seiler*, 558 F.2d 284, 288 (5th Cir. 1977), the Fifth Circuit rejected a similar challenge to the admission under the "business records" exception of a Final Investigation Report prepared by an investigator for the Department of Housing and Urban Development ("HUD") in an action under the Fair Housing Act, 42 U.S.C. § 3601 *et seq.* The court reasoned that the report was prepared pursuant to HUD's statutory mandate in the course of

---

1. Thompson testified that he annually makes 80 to 100 such visits to food retailers participating in the Food Stamp Program.

2. Of the eight compliance investigation visits to Supermarket, on four occasions no ineligible items were purchased. Neither party offered the Transaction Reports of the four "unfruitful" visits at trial.

3. There is some dispute, usually in criminal cases, whether the admission of Government investigative reports is governed by Rule 803(6) or by Rule 803(8). *See, e.g., United States v. American Cyanamid Co.*, 427 F.Supp. 859 (S.D. N.Y.1977); *see generally* Weinstein, *Evidence* ¶ 803(6)[03]. However, in affirming criminal convictions this court has held that where, as here, the author of the document testifies and is subject to cross-examination, public records that are inadmissible under Rule 803(8) still may be admitted under another hearsay exception, such as Rule 803(6). *See, e.g., United States v. King*, 613 F.2d 670, 672–73 (7th Cir. 1980). If this is the case in the criminal context, governed by constitutional as well as evi-

dentiary considerations, then surely the same approach should apply here. In any event, because we find that the Transaction Reports were admissible under Rule 803(6), we have no occasion to consider the admissibility of them under any other hearsay exception, as the Government urges us to do.

4. Supermarket argues that the Transaction Reports were made by James and merely witnessed by Thompson. We are satisfied that, as described above, it was Thompson who completed the forms, with James' assistance. Moreover, it is not clear what difference James' completing the forms would make, because Supermarket does not point to, and we have not found, any evidence indicating that James had a greater incentive to misrepresent the facts included on the forms than Thompson. For example, nothing in the record tends to prove that either Thompson or James had a pecuniary incentive to gather evidence supporting disqualifications from the Food Stamp Program.

conciliation efforts and not in anticipation of litigation. *See also Falcon v. General Telephone Co. of Southwest,* 626 F.2d 369 (5th Cir. 1980), vacated on other grounds, 450 U.S. 1036, 101 S.Ct. 1752, 68 L.Ed.2d 234 (1981) (letters from General Services Administration to employer in employment discrimination action admissible under Rule 803(6)).

Similarly, the Transaction Reports at issue here were prepared pursuant to the Food and Nutrition Service's mandate to effectuate the purpose of the Food Stamp Program,[5] which is to:

> permit low-income households to obtain a more nutritious diet through normal channels of trade by increasing food purchasing power for all eligible households who apply for participation.

7 U.S.C. § 2011.[6] The reports were completed after each visit regardless whether violations were found. Even when violations were found, litigation was not necessarily anticipated by Thompson and James because litigation ensues only where, as here, the agency imposes sanctions under 7

U.S.C. § 2021 and the retailer elects to seek judicial review under U.S.C. § 2023.[7] For these reasons, the Transaction Reports were properly admitted.[8]

*Sufficiency of Evidence*

Supermarket next contends that there was no evidence either (1) that Minnie James actually purchased non-food items; or (2) that Supermarket received the warning required by 7 C.F.R. § 278.6(e)(3)(i) before the imposition of a six-month disqualification. These arguments require little discussion.

The district court found that James purchased non-food items with food stamps on four occasions. Memorandum Opinion and Order at 2. This finding is supported by the testimony of James and Thompson as well as by the Transaction Reports. Moreover, the only other witness, plaintiff Yacoub Ali Abdel, did not deny having accepted food stamps for non-food items, but claimed that such instances were mistakes. Thus, we cannot conclude that the trial

---

5. *See* 7 C.F.R. § 271.3.

6. Thus, present regulations and those in effect at other times relevant to this action permit acceptance of food stamps only in exchange for eligible food. 7 C.F.R. §§ 278.2(a) (1979), 272.-2(b) (1978).

7. The reports at issue here are analogous to records found not to have been prepared in anticipation of litigation in *United States v. Baxter,* 492 F.2d 150 (9th Cir.), *cert. dismissed,* 414 U.S. 801, 94 S.Ct. 16, 38 L.Ed.2d 38 (1973), *cert. denied,* 416 U.S. 940, 94 S.Ct. 1945, 40 L.Ed.2d 292 (1974), decided prior to the effective date of the Federal Rules of Evidence under the common law "business records" exception. At issue in *Baxter* was the admission of a "customer book" recording the narcotics sales of a large drug ring. For each sale, the book listed the name and telephone number of the purchaser as well as the amount and price of the narcotics. The keeper of the book continued to make entries for two and a half months after he began assisting the Government's investigation and before he delivered the records to federal agents.

The *Baxter* defendants unsuccessfully contended that, at least with respect to the entries made after the bookkeeper became an informant, the book was prepared in anticipation of litigation—their criminal prosecution. Explain-

ing that the test is not to be found in the motivation of the employee preparing the record but rather in the function of the record in the operation itself, the court upheld the admission of the customer book because the ringleaders continued to depend on it after the date that the preparer agreed to cooperate with Government. 492 F.2d at 164–65. Here, even if litigation was probable when the records were prepared, Food and Nutrition Service depended on the accuracy of the Transaction Reports for statistical and other non-litigation purposes. The fact that reports were prepared regardless whether violations were found indicates that the forms were completed accurately and honestly.

8. The Government also cogently argues that common sense suggests the admission of Transaction Reports because in reviewing agency action the district court ought to examine the evidence upon which the agency relied. Moreover, under Fed.R.Civ.P. 61 the erroneous admission of evidence is not reversible error unless it is "inconsistent with substantial justice." Here, because Supermarket failed to meet its burden of proving by a preponderance of the evidence that the agency action was invalid, *Modica v. United States,* 518 F.2d 374, 376 (5th Cir. 1975), the admission of the Transaction Reports was harmless error at worst.

court's findings in this regard were clearly erroneous.

 The district court also adequately disposed of Supermarket's claim that it did not receive an adequate warning. Thus,

Plaintiffs contend that since there was no evidence that the Food and Nutrition Service had specifically warned plaintiffs about the possibility that violations were occurring and the possible consequences of those violations, the six-month disqualification determination is invalid. 7 C.F.R. § 278.6(c)(3)(i). Plaintiffs, however, have the burden of proving by a preponderance of the evidence that they did not receive a proper warning. [*Modica v. United States, supra*, note 8]. As plaintiffs did not even deny that they received a proper warning, they have failed to carry their burden of proof on this issue.

Memorandum Opinion and Order at 5 n.3.

AFFIRMED.