In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-1537

STEPHEN C. FELLS, doing
business as STEPHEN SNACK
FOODS CANDY & VARIETY,

*Plaintiff-Appellant*,

*v.*

UNITED STATES OF AMERICA,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 2:08-cv-00782-AEG—**Aaron E. Goodstein**, *Magistrate Judge.*

SUBMITTED OCTOBER 14, 2010—DECIDED DECEMBER 23, 2010

Before RIPPLE, MANION and SYKES, *Circuit Judges.*

RIPPLE, *Circuit Judge.* Stephen Fells, owner and operator of a small convenience store in Milwaukee, Wisconsin, seeks review of a district court order upholding the final decision of the Food and Nutrition Service of the United States Department of Agriculture ("USDA"). The USDA decision permanently disqualified Mr. Fells's

store, Stephen Snack Foods Candy & Variety, from participating in the Food Stamp Program, now referred to as the Supplemental Nutrition Assistance Program ("SNAP" or "Program"), for engaging in the trafficking of food stamps. *See* 7 C.F.R. § 271.2.[1] Finding that Mr. Fells failed to satisfy his burden of proving by a preponderance of the evidence that the disqualification from SNAP was invalid, the district court upheld the agency's final determination of disqualification. On appeal, Mr. Fells continues to deny that he engaged in the trafficking of food stamps. For the reasons set forth in this opinion, we affirm the judgment of the district court.

# I

# BACKGROUND

In 2008, the USDA conducted an investigation of Mr. Fells's store for activity suspected to be in violation of the federal food stamp laws and regulations. The store's questionable transactions had been brought to the agency's attention through its automated monitoring program. An investigation by an USDA field officer revealed an unusually high number of "large" food stamp transactions between August 2007 and January 2008. During this time, the agency tracked seventy-

---

[1] 7 C.F.R. § 271.2 defines "trafficking" as "the buying or selling of coupons, ATP cards or other benefit instruments for cash or consideration other than eligible food."

one transactions, each exceeding thirty dollars—a volume it considered suspiciously high given the store's small size and inventory. In addition, the field officer also uncovered an unusually high number of transactions made in even dollar amounts. Relying upon the field officer's recommendation, the USDA ultimately determined that Mr. Fells had exchanged benefits for something other than eligible food in violation of agency regulations. *See* 7 C.F.R. §§ 271.2, 278.6(e)(1)(i).

On March 27, 2008, the agency sent Mr. Fells a letter, informing him that it had decided to disqualify his store permanently from participating in the Program under 7 U.S.C. § 2021(b)(3)(B). Mr. Fells appealed this decision within the agency, and, on August 7, 2008, the USDA affirmed its original determination of disqualification. In the district court, Mr. Fells, proceeding pro se, sought judicial review of the USDA disqualification under 7 U.S.C. § 2023(a)(13). The court appointed an attorney to represent Mr. Fells at trial. In its pre-trial order, the district court ruled that Mr. Fells bore the burden of proof to establish the invalidity of the agency's action.

At trial, Mr. Fells provided several explanations for the irregular SNAP transactions. He stated that, rather than making change, he offered his customers additional merchandise or candy bars to round out uneven dollar transactions. He further explained that some benefit redemptions exceeded thirty dollars because they covered higher-priced items, such as baby formula or deliveries of wholesale surplus meats.

Although the court acknowledged that the evidence against Mr. Fells was circumstantial, it ultimately found that his explanations were neither persuasive nor supported by the evidentiary record. The court agreed with the Government that it would be unusual for clients to regularly make large purchases of baby formula using food stamps, rather than the more specific benefits for women, infants and children under the WIC Program. Additionally, the court noted that Mr. Fells had failed to produce inventory receipts to support his explanation regarding the high-priced meat sales. Although the court expressed concern over the fact that it was requiring Mr. Fells to prove his innocence, it explained that such a burden is placed upon any retailer that has been disqualified from the Program. Because the district court determined that Mr. Fells had failed to prove the invalidity of the agency's actions, it upheld the agency's final determination of disqualification.[2]

## II

## DISCUSSION

Proceeding pro se on appeal, Mr. Fells challenges the district court's determination that he did not meet his burden of proving by a preponderance of the evidence

---

[2] In addition, as the sole proprietor and employee of Stephen Snack Foods Candy & Variety, Mr. Fells is disqualified permanently from participating in SNAP. *See* 7 U.S.C. § 2021(e)(1).

that he did not traffic in food stamps. He maintains that the agency provided no evidence or witnesses to substantiate any wrongdoing on his part and seems to suggest that, in a trial de novo, the agency has the burden of justifying its disqualification determination.

**A.**

In 1964, Congress permanently established what was then called the Food Stamp Program. The Food Stamp Act of 1964, Pub. L. No. 88-525, 78 Stat. 703 (1964). It aims both to feed low-income individuals and to strengthen the nation's agricultural economy, *see* 7 U.S.C. § 2011, and authorizes the Secretary of Agriculture to promulgate regulations to implement the program, *id.* §§ 2013(c), 2021(a)(2). Food stamps originally took the form of paper coupons. In 1996, Congress set a deadline for states to replace the coupons with electronic benefit transfer ("EBT") systems, which use debit-type cards to deduct benefits from a central location. *See id.* § 2016(h). Upon the completion of this change in 2008, Congress renamed the program the Supplemental Nutrition Assistance Program. *See* Food, Conservation, and Energy Act of 2008, Pub. L. No. 110-234, § 4001(b), 122 Stat. 923, 1092 (2008). Funding for the program is currently authorized through 2012. 7 U.S.C. § 2027(a)(1). Just as individuals must satisfy certain eligibility requirements in order to participate in SNAP, retail food store owners also must comply with applicable provisions and regulations. *See id.* § 2018. Fraud or improper use of benefits can

disqualify[3] stores from SNAP. *Id.* § 2021(a)(1). The USDA may disqualify, "for a specified period of time," a retail store from further participating in the Program for certain offenses, such as the "trafficking" in food stamps: buying or selling "benefit instruments for cash or consideration other than eligible food." 7 U.S.C. §§ 2021(a)(1), 2021(b)(3)(B); 7 C.F.R. § 271.2. Section 2021(b)(3)(B) provides that a store shall be disqualified permanently for its first trafficking offense. Although the Secretary has discretion to impose a civil monetary penalty in lieu of disqualification if he or she "determines that there is substantial evidence that such a store . . . had an effective policy and program in effect to prevent violations," in this case, the Secretary's discretion is limited because Mr. Fells, as the sole owner and employee, was directly involved in the trafficking violations. *See* 7 U.S.C. § 2021(b)(3)(B). Due to the nature of Mr. Fells's involvement in the offenses, his store is subject to permanent disqualification as authorized under § 2021(b)(3)(B).

When determining whether a store owner has trafficked in food stamps, the agency may rely on "facts established through on-site investigations, inconsistent redemption data, or evidence obtained through a transaction report under an electronic benefit transfer system." *Id.* § 2021(a)(2). If the USDA decides to disqualify a store, the Secretary must notify its owner, and the

---

[3] Only authorized food retailers can participate in the Program. *See* 7 C.F.R. § 278.2.

owner then may file a written request for review within ten days. *Id.* § 2023(a)(1), (3).

**B.**

We turn now to the statutory sections providing for judicial review.

The applicable statute, 7 U.S.C. § 2023, provides an aggrieved store with the opportunity to obtain judicial review of the final USDA determination by filing a complaint against the United States in district court. *Id.* § 2023(a)(13). The plaintiff then receives a trial de novo "in which the court shall determine the validity of the questioned administrative action." *Id.* § 2023(a)(15).[4] The statute provides no further guidance regarding how the trial should proceed or which party bears the burden of proof.

Although the statute itself is silent as to the issue of which party bears the burden of proof in a trial de novo under § 2023, other circuits have held consistently that, given the nature of the statutory scheme, a store owner who seeks to set aside an agency action bears the burden of proof. *See Kim v. United States*, 121 F.3d 1269, 1272 (9th Cir. 1997); *Warren v. United States*, 932 F.2d 582, 586 (6th Cir. 1991); *Redmond v. United States*, 507 F.2d 1007, 1011-12 (5th Cir. 1975). In the watershed case, *Redmond*

---

[4] "A trial de novo is a trial which is not limited to the administrative record." *Kim v. United States*, 121 F.3d 1269, 1272 (9th Cir. 1997).

*v. United States*, 507 F.2d 1007 (5th Cir. 1975), the Fifth Circuit recognized that the statute calls for the court to "determine the validity of the questioned administrative action," not to revisit the issue as if the USDA decision never had occurred. *Id.* at 1011-12 (quoting 7 U.S.C. § 2023(a)(15)). The Fifth Circuit interpreted this statutory language to mean that Congress intended that the agency action be entitled to a "presumption of validity." *Id.* at 1012. Therefore, the court concluded that it was incumbent upon the store owner to present evidence challenging the agency's decision. *Id.*

Although we have not addressed directly the question of which party bears the burden of proof when a plaintiff seeks to upset a USDA disqualification determination, we have applied consistently the standard articulated by the court in *Redmond* when confronted with similar questions invoked under the Program. In *Estremera v. United States*, 442 F.3d 580, 587-88 (7th Cir. 2006), we upheld the district court's determination that, because the store owner sought judicial review of the agency's *penalty calculation* under § 2023(a)(13), she bore the burden of proving the invalidity of the agency's determination by a preponderance of the evidence. Similarly, in *Abdel v. United States*, 670 F.2d 73 (7th Cir. 1982), we stated that "[b]ecause Supermarket failed to meet its burden of proving by a preponderance of the evidence that the agency action was invalid the admission of the Transaction Reports was harmless error at worst." *Id.* at 76 n.8 (citation omitted). Therefore, based upon prior decisions of this court, as well as the decisions of other circuits, we now make explicit what has

been implicit in our earlier decisions. The district court correctly determined that Mr. Fells bore the burden of proving, by a preponderance of the evidence, that the agency's determination was invalid. Because the judicial proceeding considers the issues de novo, Mr. Fells could have proved the determination invalid by demonstrating "that the factual determination was wrong." *McGlory v. United States*, 763 F.2d 309, 311 (7th Cir. 1985) (per curiam) ("The district court must determine the validity of the agency's factual determinations anew, on a fresh record.").

## C.

Having determined that the district court properly allocated the burden of proof to Mr. Fells under § 2023, we turn now to Mr. Fells's argument that the district court erred in finding that he failed to satisfy this burden.

We shall not overturn the district court's factual findings unless they are clearly erroneous. *See Abdel*, 670 F.2d at 76–77. "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (internal quotation marks omitted). Here, we cannot say that the district court's finding that Mr. Fells failed to provide evidence to prove the invalidity of the agency's action was clearly erroneous. The district court carefully examined all of the evidence—store photos, inventory receipts and information about customer purchasing

patterns at surrounding stores—which amply supported the agency's finding that Mr. Fells trafficked in food stamps. Mr. Fells was "free to rebut" that evidence. *Redmond*, 507 F.2d at 1012 (quotation marks omitted). Here on appeal, however, Mr. Fells has not demonstrated that the district court's conclusion that his explanations were unpersuasive and unsupported by the record is clearly erroneous. Accordingly, we must conclude that the district court correctly found that Mr. Fells failed to provide enough evidence at trial to invalidate the agency's determination.

## Conclusion

Because the district court correctly determined that Mr. Fells did not meet his burden of proving the invalidity of the USDA disqualification determination, the judgment of the district court is affirmed.

AFFIRMED