**Antoney Kamvar SHARIFI, Plaintiff,**

v.

**UNITED STATES of America, United States Department of Agriculture, Food and Nutrition Service, Defendant.**

**CV No. 90–HM–2305–NE.**

United States District Court,
N.D. Alabama, N.D.

Jan. 25, 1991.

Cecil W. Morris, Huntsville, Ala., for plaintiff.

Frank W. Donaldson, U.S. Atty., Katherine L. Corley, Asst. U.S. Atty., Birmingham, Ala., for U.S.

## MEMORANDUM OPINION AND ORDER

HALTOM, District Judge.

The plaintiff ANTONEY KAMVAR SHARIFI d/b/a Sav–U–Foods commenced this action against the defendant UNITED STATES OF AMERICA, UNITED STATES DEPARTMENT OF AGRICULTURE, FOOD AND NUTRITION SERVICE [hereinafter "Food and Nutrition Service"] on October 23, 1990 in the Circuit Court of Madison County, Alabama pursuant to the provisions of 7 U.S.C. § 2023 seeking judicial review of the administrative determination of the Food and Nutrition Service which disqualified plaintiff and his Huntsville, Alabama grocery store [Sav–U–Foods] from participation in the federal Food Stamp Program.[1] On October 29, 1990 this action was removed to this United States District Court by the federal defendants predicated on the fact that this Court had original jurisdiction of plaintiff's complaint against the defendant Food and Nutrition Service of the United States Department of Agriculture under 28 U.S.C. § 1346 and 7 U.S.C. § 2023, thus making this action removable pursuant to 28 U.S.C. § 1441.

Feeling aggrieved by the administrative disqualification above-referenced, Sharifi in accordance with applicable Food and Nutrition Service regulations first filed a timely written request pursuant to 7 U.S.C. § 2023 for an opportunity to submit information in support of his position with the person designated by the Secretary. Following the administrative review then accorded him by the Food and Nutrition Service in conformity with 7 U.S.C. § 2023 and the regulations promulgated thereunder and on September 18, 1990 the Administrative Review Division of the Food and Nutrition Service in writing found that Sharifi's five year period of disqualification was supported by the record and appropriate in accordance with Section 278.6(e)(2)(i) of the Food Stamp Program Regulations. The Administrative Review Division further held that since the record showed that since there was no other food markets within a reasonable distance from Sharifi's grocery store, program customers would suffer a hardship if Sharifi's store was disqualified which were grounds for the imposition of a civil monetary penalty instead of a disqualification. Because of this it was the further determination of the Administrative Review Division that the decision to impose a $50,000 civil money penalty upon Sharifi in lieu of a five year period of disqualification was in accordance with Sections 278.6(f) and 278.6(g) of the program regulations and therefore must be sustained.[2]

It has been previously noted that plaintiff Sharifi commenced this action on October 23, 1990 in state court pursuant to 7 U.S.C. § 2023 seeking judicial review of the administrative determination above-referenced and that the federal defendants removed this case to this Court on October 29, 1990. In that complaint for administrative review Sharifi made application for the Court to temporarily stay such administrative action pending disposition of his trial de novo by this Court in conformity with the pertinent provisions of 7 U.S.C. § 2023 which provide as follows:

The suit in the United States district court or State court shall be a trial de novo by the court in which the court shall

1. The Food and Nutrition Service administratively determined that an assessment of a civil money penalty of $50,000 in lieu of a five [5] year disqualification from participation in the Food Stamp Program was an appropriate penalty for Sharifi for his alleged violations. In the event Sharifi does not pay the $50,000 civil penalty he is disqualified for a five [5] year period from participating in the Food Stamp Program.

2. The September 18, 1990 written determination by the Administrative Review Division of the Food and Nutrition Service is part of this record, appears verbatim in the Appendix hereto, and is expressly made a part of this Order.

determine the validity of the questioned administrative action in issue. If the court determines that such administrative action is invalid, it shall enter such judgment or order as it determines is in accordance with the law and the evidence. During the pendency of such judicial review, or any appeal therefrom, the administrative action under review shall be and remain in full force and effect, unless on application to the court on not less than ten days' notice and after hearing thereon and a consideration by the court of the applicant's likelihood of prevailing on the merits and of irreparable injury, the court temporarily stays such administrative action pending disposition of such trial or appeal.

Plaintiff Sharifi's application for a temporary restraining order against the defendant Food and Nutrition Service of the United States Department of Agriculture in this action came on to be heard on Tuesday, November 20, 1990, commencing at 10:00 a.m. in the courtroom of the United States Courthouse in Huntsville, Alabama. Appearing for plaintiff Sharifi was his counsel of record, C. Wayne Morris of Huntsville. Appearing for the defendant Food and Nutrition Service as its counsel of record was Katherine L. Corley, Assistant United States Attorney. A federal court reporter was present throughout and the entire hearing was conducted of record. The Court thereupon heard a substantial amount of live, sworn testimony on behalf of the plaintiff and on behalf of the defendant, including the testimony of plaintiff Antoney Kamvar Sharifi and the testimony of defendant's chief witness, James Ransom, black male American citizen of Huntsville, Alabama, who in latter February, 1990 and very early March, 1990 was a part-time undercover employee of the Food and Nutrition Service ["FNS"].[3] The evidence shows without dispute that during this February–March 1990 period Ransom at the specific direction of FNS Agent Cooper *but by himself and not in the sight of his FNS supervisor* allegedly "shopped" three or four times at five or six preselected Huntsville grocery stores in an FNS undercover capacity with FNS owned food stamps in his possession. It was the *contention* of the defendant Food and Nutrition Service in the administrative action against Sharifi which preceded this lawsuit commenced by Sharifi against FNS and *is the contention* now in this federal court judicial review litigation wherein Sharifi is plaintiff and FNS is the defendant that on four separate occasions and on four separate dates in February and March 1990 Ransom with his use and the store's acceptance of food stamps purchased from Sharifi's Sav–U–Foods and from certain Sharifi employees both food and non-food items which were ineligible to be purchased with food stamps. It is here noted, however, that the evidence shows that FNS Agent Cooper did not accompany his part-time undercover agent Ransom to Sharifi's grocery store on any of these occasions nor did he observe Ransom in or even near that store on any occasion when Ransom is said by FNS to have made his illegal purchases from Sharifi's Sav–U–Foods with the use of food stamps to buy certain ineligible items.

At the conclusion of the November 20, 1990 hearing above-referenced this Court took under submission the issue of whether Sharifi was entitled to a court ordered stay of such FNS administrative action against Sharifi under 7 U.S.C. § 2023. After a thorough consideration of all of the evidence and exhibits presented by the parties at the November 20, 1990 hearing, the pleadings, briefs and arguments and applicable law the Court on November 28, 1990 [after finding, determining and holding that the plaintiff Sharifi had proved both irreparable injury and a likelihood that he would prevail on the merits in this action

---

**3.** Ransom was employed by FNS Special Agent Billy Cooper whose FNS responsibility was at least in part the apprehension of food stamp violators, including owners and operators of grocery stores which accepted food stamps from customers. Ransom's entire work for FNS in Huntsville was in an undercover capacity visiting grocery stores selected by Agent Cooper in the guise of a customer with FNS planted food stamps on his person and instructions from the FNS Agent to buy groceries and other merchandise which were both eligible and ineligible under applicable FNS regulations to be purchased with food stamps.

for judicial review] proceeded to determine the validity of the questioned FNS administrative actions in issue against plaintiff[4] and thereupon entered Order staying the questioned administrative action in issue by the defendant Food and Nutrition Service against the plaintiff Antoney Kamvar Sharifi d/b/a Sav–U–Foods pending disposition of trial de novo by the Court under 7 U.S.C. § 2023 or on appeal. In that same Order the Court ordered that the trial de novo by the Court in this action was set and scheduled for January 24, 1991, commencing at 9:30 a.m. in the courtroom of the United States Courthouse in Huntsville, Alabama.

Under date of January 23, 1991 the plaintiff and defendant through their counsel of record filed in this case a Stipulation which stipulates as follows:

1. The transcript of the testimony taken at the hearing on plaintiff's Motion for Temporary Restraining Order on November 20, 1990, shall be offered by both parties as evidence on the issue of whether the plaintiff has proven by a preponderance of the evidence that the alleged violations did not occur, and the parties will not offer further testimony on that issue at the hearing presently scheduled for January 24, 1991.

2. On January 24, 1991, the parties will submit evidence by testimony and exhibits on the issue of whether the sanction imposed by the defendant was arbitrary and capricious.

The transcript of the testimony taken at the hearing on plaintiff's motion for Temporary Restraining Order on November 20, 1990 was delivered to the Huntsville, Ala-

bama office of this judge about 8:30 a.m. on the 24th day of January, 1991, about one hour before the scheduled time for the de novo hearing. This judge thereupon carefully reviewed the entire testimony of the part-time undercover FNS Agent James Ransom and flagged that part of the transcript with yellow tabs to highlight and underscore those parts of Mr. Ransom's testimony which prompted this judge to reject his November 20, 1990 evidentiary presentation given in open court at the instance and call of the FNS defendant. This Court here and now reiterates and readopts its previous determination and holding that Mr. Ransom's testimony concerning his alleged visits to and alleged purchases from the Sharifi grocery store in Huntsville on the four alleged occasions in question at the instance and sloppy direction of FNS Special Agent Billy Cooper with little or no Cooper guidance or Cooper direction is neither credible nor believable. Moreover, Cooper himself didn't think enough of Ransom's alleged undercover food stamp activity to even watch or observe him entering and leaving the Cooper selected grocery stores from time-to-time to make therefrom planned, undercover illegal purchases through the use of FNS owned food stamps. This Court is thoroughly convinced and finds from closely observing Mr. Ransom when he testified, from hearing his testimony in open court on November 20, 1990 and from carefully reading the transcript of Mr. Ransom's testimony prepared by the federal court reporter of this judge and filed by him in this Court on the 24th day of January, 1991 that the FNS sponsored witness, James

---

**4.** Based on a close, first-hand scrutiny of the defendant's chief witness, James Ransom, throughout his entire oral testimony on November 20, 1990, a careful consideration of what he said and *did not say* as a witness on the stand with respect to his actual independent recollection of his alleged visits to Sharifi's Sav–U–Foods on the occasions in question and of his alleged purchases of certain items from Sav–U–Foods with the use of food stamps when such items were allegedly not eligible for purchase with stamps, a judgment call by this judge was made as to Ransom's credibility or believability and as to the weight to be given to his testimony which was crucial to defendant's case in this lawsuit. The Court found and concluded that

Ransom's testimony respecting the alleged food stamp violations by Sharifi should be completely rejected since Ransom clearly and obviously had no independent recollection concerning his alleged visits to Sharifi's grocery store or concerning the alleged Sharifi food stamp violations. Given this fact, the questioned administrative action of FNS against Sharifi is therefore clearly invalid. Given the judgment call above-referenced by this judge and given this judge's finding that the administrative action at issue was consequently invalid [being without evidentiary support], the administrative action of the defendant FNS against plaintiff Sharifi had to be stayed until the trial de novo was held.

Ransom, at the time of his November 20, 1990 testimony had absolutely no independent recollection of the alleged facts about which he testified in this Court. Given these facts, the questioned administrative action of the Food and Nutrition Service in this case against the plaintiff Sharifi is indeed invalid since the other evidence in this case, including the alleged implicit and/or explicit admissions by Sharifi in his November 20, 1990 testimony and any other alleged admissions made by him in the administrative process which appear in the record more as oral suggestions by able government counsel in final argument than as record evidence, simply does not and will not support the FNS administrative action in question against this plaintiff. Moreover, this Court finds and holds that the plaintiff Sharifi, as the party seeking judicial review pursuant to 7 U.S.C. § 2023, has fully met his burden of establishing the invalidity of the FNS agency action by a preponderance of the evidence. *Modica v. United States*, 518 F.2d 374, 376 (5th Cir. 1975).[5] AND IT IS SO ORDERED, ADJUDGED and DECREED. And it is further

ORDERED, ADJUDGED and DECREED that the questioned administrative action in issue in this case by FNS against Antoney Kamvar Sharifi d/b/a Sav–U–Foods is hereby VACATED and SET ASIDE in its entirety and that the defendant Food and Nutrition Service of the United States Department of Agriculture is hereby permanently ENJOINED and RESTRAINED from disqualifying the plaintiff Sharifi as an FNS authorized and/or approved grocery store food stamp participant in the FNS Food Stamp Program by reason of or on the basis of any of the alleged facts set out in the September 18, 1990 FNS Administrative Review Division written decision which is set out verbatim in the Appendix hereto and made a part thereof. And it is further

ORDERED that the costs of this cause are taxed against the defendant Food and Nutrition Service of the United States Department of Agriculture.

DONE and ORDERED.

## APPENDIX

## UNITED STATES DEPARTMENT OF AGRICULTURE

## FOOD AND NUTRITION SERVICE

## ADMINISTRATIVE REVIEW DIVISION

#11 LaVista Perimeter Office Park, Suite 19

Tucker, Georgia 30084

September 18, 1990

CERTIFIED MAIL—Return Receipt Requested

Mr. C. Wayne Morris

Attorney at Law

2206–A Clinton Avenue, West

Huntsville, Alabama 35805

Re: Sav–U–Foods, Huntsville, Alabama
Mr. Antoney Kamvar Sharifi, Owner

Dear Mr. Morris:

The following concerns the request for administrative review of the decision of the Officer-in-Charge of the Montgomery Field Office to impose a Civil Money Penalty of $50,000 in lieu of disqualifying your client's store from participation in the Food Stamp Program for a period of five years. In reaching a decision in this case, I have given careful consideration to the information which you submitted in support of your position that this sanction should not be imposed. I also appreciate having had the opportunity of discussing this matter with you by telephone.

The file furnished me shows that during an investigation of the level of compliance with Food Stamp Program regulations at Mr. Sharifi's store, certain program violations were found to have occurred during February and March, 1990. These violations were set forth in a letter of charges

---

**5.** This case was decided prior to the close of business on September 30, 1981, and is binding precedent in the Eleventh Circuit under *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981).

issued to Mr. Sharifi on April 6, 1990. According to the letter of charges, on one occasion Moe Kossari, who later identified himself as the manager, accepted food stamp coupons in exchange for ineligible items; and on four other occasions an unidentified male clerk also accepted food stamp coupons in exchange for ineligible items, on one of these occasions returning $3.65 in cash as change, and on two of these occasions charging the customer a service charge of $2.00.

Of a total of 30 items listed as sold during these transactions, 18, or about 60 percent, were ineligible, and included a bottle of wine and four six packs of beer, considered to be major ineligible items in the quantities sold; motor oil, light bulbs, razors, matches, toilet tissue, a comb, cleanser, and various soap products.

You replied to the charges on April 19, 1990, asking for a description of the unidentified clerk, which was supplied to you by the Officer–In–Charge in his April 23, 1990 letter. After giving consideration to all of the available information, a notice of determination for a Civil Money Penalty of $50,000 in lieu of a five year period of disqualification was issued on April 27, 1990. On May 9, 1990 you requested an administrative review of this decision, and asked for additional information. In response, you received a copy of the investigative report on May 29, 1990. You provided further information on your reasons for requesting the review in our telephone conversation of May 18, 1990 and your letter of June 12, 1990. Your contentions may be summarized essentially as follows:

1. You felt that there was no factual basis for the decision on the penalty, because no evidence had been presented and your client had no opportunity to examine the person who said that the violations took place. You felt that your client had been denied due process of law, and that the decision had been arbitrary and capricious.

2. In your request for review you stated that your client was unable to identify the employee involved in four of the transactions based upon the description you had been given by the Officer–In–Charge. However, in his June 12, 1990 affidavit, your client advised that the employee referred to in the report as Joseph, was a temporary employee whom Mr. Sharifi had to fire for numerous reasons.

3. Mr. Sharifi has tried to impress the requirements of the program upon his employees, but many of them do not understand English well. If he finds that there is a problem, he takes steps to correct it. He was unaware of any of the violative transactions, and they were beyond his knowledge or control. He has never knowingly required a service charge to accept food stamps or permitted the sale of ineligible items for food stamps.

4. Your client feels that it will place an undue hardship on him if he has to pay the money penalty or accept disqualification, since a large portion of his business involves food stamps, and his small family store cannot financially afford to pay the Civil Money Penalty. Disqualification will probably put the store out of business and will hurt many of his customers who live in the surrounding area.

5. You attached a June 12, 1990 affidavit of Mo Kassari to your June 12, 1990 letter, in which Mr. Kassari denied selling the charged items or any other ineligible items to anyone for food stamp coupons.

According to the file, the store was authorized to participate in the Food Stamp Program under the name of Bi–Low Foods in August of 1986 after Mr. Sharifi had been contacted by a program representative to ensure that the program regulations and the need to follow them in food stamp transactions were thoroughly understood. The file shows that a program representative visited the store in January of 1987, and found that the name of the store had been changed to Sav–U–Foods. The file further shows that a program representative contacted the manager of the store on February 24, 1990 to discuss concerns that violations might be ocurring and the possible consequences. In order to stress the

importance of program compliance, this discussion was confirmed in a letter sent to your client by certified mail on February 24, 1987. In April of 1989 your client was again contacted by a program representative to discuss a complaint that the store was buying food stamps for cash. This discussion was also confirmed in a letter sent to Mr. Sharifi on April 20, 1989 which stated, in part:

"During this conversation, you were warned about the possibility that violations of the Food Stamp Program Regulations were occurring in your firm. The complaint that your store purchased food stamps ... was discussed. You denied that any violations have occurred in your store."

The letter confirmed that:

"Mr. Spencer completely reviewed the regulations governing food coupon transactions with you, emphasizing that Section 278.2(a) prohibits accepting food coupons in exchange for anything eligible food. A copy of the regulations is enclosed for your further use and review."

And advised Mr. Sharifi that:

"This is an OFFICIAL WARNING that violations may lead to your disqualification from the Food Stamp Program. You should take special care to prevent violations, such as, but not limited to, exchanging cash for coupons ... the sale of ineligible items ... You are responsible for violations committed by your employees, including new and part-time employees."

From this record, I must conclude that your client was given more than adequate counsel and guidance from program personnel concerning the proper procedures to follow in food stamp transactions and afforded ample opportunity to take measures to insure that no violations were occurring. I also find that the letter quoted above satisfies the requirements of Section 278.-6(e)(2) that the firm have been previously advised of the possibility that violations were occurring and of the possible consequences of violating the regulations.

The record shows that in spite of these efforts, when the level of program compliance was investigated in February and March 1990, serious violations were found to be occurring.

In our telephone conversation and my letter of May 22, 1990 acknowledging receipt of your request for review, I advised in regard to your contention that your client had not received due process because he had not been allowed to confront or cross examine the investigative personnel, that there are no provisions for adversary hearings or cross examination of witnesses during the administrative procedures of disqualification or administrative review. However, the program regulations do provide for judicial review after administrative review, and this affords due process.

I cannot accept Mr. Kassari's contentions in this matter. I find that the specific details given in the report of this investigation provide substantial evidence that the violations did, in fact, occur at Sav-U-Foods as charged, and that the store manager was personally involved in one of these transactions.

I note that the record of this investigation shows that in the five consecutive violative transactions, neither the store manager nor the other cashier involved refused to sell any item selected for purchase with food stamp coupons, although over half of the items sold were ineligible and included beer and wine, and such easily recognized non food items as light bulbs and motor oil.

Since these flagrant and repetitive violations occurred in spite of the clear warning given your client in the April 20, 1989 letter quoted above, I can only conclude that these transactions clearly demonstrate that it was the practice of the firm to permit the sale of ineligible items, including beer and wine for food stamp coupons.

I would like to emphasize that participating grocers are an essential factor in program compliance. Unless they consistently and strictly abide by program requirements, the program cannot fully accomplish its objectives and may be wholly ineffective. The sale of ineligible nonfood items for food stamp coupons substantially reduces the amount available for recipients to pur-

chase food items. Thus, the basic objective of the Food Stamp Program—to provide more food and a better diet for needy families—is nullified.

For the Food Stamp Program to achieve its purpose as provided by law, it is essential that the regulations governing the program be strictly followed and that food stamp coupons be accepted only for eligible food items purchased at the time the coupons are presented by eligible coupon holders. Violations of the regulations become known to an increasing number of food stamp recipients, to other participating stores, and, to a degree, to the general public. This has a damaging impact on the image and success of the program, especially if the violating store is permitted to continue unpenalized participation in the program.

While I am sympathetic to your comments concerning possible business losses if the Civil Money Penalty is imposed against Mr. Sharifi's firm, to allow his store to continue to participate in the program without penalty would be grossly unfair to those participating retailers who are fully complying with program regulations and to those who have been penalized in the past for similar violations.

Following my complete review of this matter, I find that the five year period of disqualification is supported by the record and appropriate in accordance with Section 278.6(e)(2)(i) of the Food Stamp Program Regulations. However, the record also shows that since there are no other food markets within a reasonable distance, program customers would suffer a hardship if your client's store is disqualified, and therefore there are grounds for the imposition of a Civil Money Penalty instead of disqualification. Because of this it is my determination that the decision to impose a $50,000 Civil Money Penalty in lieu of a five year period of disqualification is in accordance with Sections 278.6(f) and 278.-6(g) of the program regulations, and must be sustained.

As indicated in Section 278.6(h) of the program regulations, the five year disqualifi-

cation shall be implemented unless the $50,-000 Civil Money Penalty is paid. In this regard, I should like to caution your client that effective measures should be taken to insure that all employees of his firm are complying fully with the Food Stamp Program Regulations, since any further violations at the store could result in extremely serious consequences.

Your client should contact the Montgomery Field Office regarding the arrangements for payment of this Civil Money Penalty. Pursuant to Section 278.1(b)(4), your client will also need, as a firm which has been sanctioned for program violations, to post a collateral bond or irrevocable letter of credit as a further condition for continued participation. The FNS Field office advised him of the specific amount of the bond or irrevocable letter of credit and where it must be presented in Mr. King's determination letter of April 27, 1990.

In accord with the Food Stamp Act of 1977, and the regulations issued thereunder, this penalty shall become effective thirty days after your receipt of this letter. Should Mr. Sharifi choose to accept disqualification rather than pay the civil money penalty and post bond, a reapplication for participation may be submitted ten days prior to the expiration of this five year period of disqualification. At the time of any such new application, your client would then be advised, again pursuant to Section 278.1(b)(4) of the need at that time to present the collateral bond or irrevocable letter of credit as a firm previously sanctioned for program violations.

Your attention is called to Section 14 of the Food Stamp Act and to Section 279.10 of the Regulations with respect to your client's right to a judicial review of this determination. Please note that if a judicial review is desired, the complaint must be filed in the U.S. District Court for the district in which the owner resides or is engaged in business or in any court of record of the State having competent jurisdiction. The complaint must be filed within 30 days of your receipt of this letter.

Sincerely,

(s)  Wayne Alexander

Wayne Alexander

Administrative Review Officer

## STANDING ORDER PERTAINING TO DISCOVERY MATERIALS

Pursuant to Rule 5(d) A.R.Civ.P. it is ordered by the Court that depositions upon oral examination and interrogatories, requests for production, requests for admission, and answers and responses thereto, notices of intent to serve subpoenaes upon non-parties, and notices of depositions not be filed with the Clerk unless on order of the Court or for use in the proceeding. The party responsible for service of discovery material shall retain the original and become custodian. The party who notices a deposition shall be custodian of the deposition and shall maintain the original for filing if the Court so directs. If discovery materials are germane to any motion or response, only the relevant material need be filed with the motion or response. Whenever any discovery material (request, response, notice) is served, counsel shall contemporaneously deliver to the Clerk a notice identifying the date of service and the nature of the material served or the first and last page of the document served including the certificate of service. These notices shall be maintained by the Clerk with the civil action filed but will not be docketed. The custodian of any discovery material shall provide to counsel for all other parties and to all parties appearing pro se reasonable access to the material and an opportunity to duplicate the material at the expense of the copying party, and any other person may, with leave of the Court, obtain a copy of any discovery material from its custodian upon payment of the expense of the copy.