# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
July 22, 2020

Lyle W. Cayce
Clerk

No. 19-20170

JERUSALEM HALAL MEATS, INCORPORATED,

> Plaintiff - Appellant

v.

UNITED STATES OF AMERICA,

> Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:17-CV-1423

Before SMITH, HIGGINSON, and ENGELHARDT, Circuit Judges.

PER CURIAM:*

Jerusalem Halal Meats, Inc. (JHM) filed suit in district court seeking judicial review of an administrative decision by the Food and Nutrition Service (FNS) of the United States Department of Agriculture to disqualify JHM from participating in the Supplemental Nutrition Assistance Program (SNAP) for one year. The district court granted the Government's motion for summary judgment, upholding the disqualification. We AFFIRM.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 19-20170

JHM is a grocery store in Houston, Texas, that specializes in selling various types of halal meat, vegetables, and dairy products. JHM was an authorized participant in the SNAP program. In connection with an FNS investigation, a confidential informant visited JHM seven times from October 2016 to December 2016. During the first compliance visit, the informant used SNAP benefits to purchase only eligible food items. But during the next six visits, the informant was permitted by JHM employees to use SNAP benefits to purchase ineligible, major non-food items, including a board-game set, blankets, and kitchen appliances.[1] FNS notified JHM of the alleged SNAP violations and provided multiple opportunities for JHM to respond.[2] FNS ultimately determined that the violative transactions occurred as charged. Based on JHM's violations in 2016 and because JHM had previously been sanctioned,[3] FNS disqualified JHM from participating in SNAP for one year pursuant to 7 U.S.C. § 2021 and 7 C.F.R. §§ 278.6(a),(e)(5)–(6).

JHM sought review of the FNS' decision by trial de novo in the United States District Court for the Southern District of Texas. *See* 7 U.S.C. § 2023(a)(15). The Government filed a motion for summary judgment, attaching

---

[1] *See* 7 C.F.R. § 278.2(a) ("Coupons may be accepted by an authorized retail food store . . . only in exchange for eligible food."); 7 U.S.C. § 2013(a) (SNAP benefits "shall be used only to purchase food from retail food stores which have been approved for participation in the supplemental nutrition assistance program.").

[2] In a letter dated January 10, 2017, FNS informed JHM that it was being charged with "accepting SNAP benefits in exchange for merchandise which, in addition to eligible foods, included major non-food items." According to the charge letter, the misuse of SNAP benefits "warrant a disqualification period of 1 year." Enclosed with the charge letter was the FNS Investigator's report documenting the six violative transactions. After consideration of JHM's response letter, FNS recommended that JHM be disqualified from participating in SNAP for one year based on JHM's violations in 2016 and its past violations. JHM requested administrative review of the recommendation and submitted to FNS two affidavits, electronic benefit transfer receipts, and photographs of the store. On April 6, 2017, the Administrative Review Branch of the FNS issued a Final Agency Decision upholding both FNS' finding that JHM had violated the SNAP guidelines and the one-year disqualification.

[3] JHM was sanctioned by FNS in 2008 for exchanging ineligible items for SNAP benefits.

No. 19-20170

as an exhibit the complete record of the FNS' administrative proceedings. In accordance with the magistrate judge's memorandum and recommendation, the district court granted summary judgment upholding the FNS' one-year disqualification of JHM.[4] JHM appealed.

We review summary judgment de novo, applying the same standard as the district court. *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 417 (5th Cir. 2016). In an action brought under 7 U.S.C. § 2023, the district court's review is a trial de novo, in which the court "shall determine the validity of the questioned administrative action in issue." 7 U.S.C. § 2023(a)(15); *Ramirez v. Sec'y of Agric.*, 712 F.2d 150, 151 (5th Cir. 1983). The agency action stands unless JHM proves the invalidity of the administrative action by a preponderance of the evidence. *Redmond v. United States*, 507 F.2d 1007, 1011–1012 (5th Cir. 1975); *see also Modica v. United States*, 518 F.2d 374, 376 (5th Cir. 1975). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if a reasonable trier of fact could find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

JHM argues that summary judgment was inappropriate because there are genuine disputes of material facts regarding whether a violation occurred.[5]

---

[4] In its analysis of JHM's affidavits, the magistrate judge concluded, "the affidavits do not specifically deny that the violations occurred." The magistrate judge also noted that despite the opportunity to conduct discovery in its federal proceedings, JHM chose to rely on the same evidence it had presented to FNS: "JHM chose not to serve requests for production, interrogatories, or requests for admission on the United States. JHM took no depositions."

[5] JHM's sole argument on appeal is that it produced sufficient evidence to create a genuine dispute of material fact as to the existence of the violations, specifically challenging the district court's analysis of its affidavits. JHM does not challenge on appeal the district court's finding that the FNS' penalty was not arbitrary or capricious or its rejection of JHM's due process claim. Accordingly, these arguments are waived. *See United States v. Thibodeaux*, 211 F.3d 910, 912 (5th Cir. 2000) ("It has long been the rule in this circuit that

No. 19-20170

JHM points to an affidavit from a JHM director and an affidavit from the store clerk allegedly responsible for the 2016 violative transactions. The director's affidavit states that JHM employees are trained to accept SNAP benefits for only eligible food items, that JHM monitors employees with video surveillance, and that JHM informs its employees that they are being monitored. The clerk's affidavit discusses her SNAP training, states that she never knowingly sold ineligible items for SNAP benefits, and that she knew she was being monitored by video. The clerk believed that if she did "accept SNAP benefits for [an ineligible] item, it [would] be seen by [her] manager or other employees, and the transaction would be recorded by the cameras and [she] would be fired." According to JHM, however, it was unable to obtain its video surveillance of the alleged violations because the videotapes were "written over."[6]

None of the statements in the affidavits create a genuine dispute that the SNAP violations alleged by FNS occurred. The director's affidavit details efforts to avoid violating SNAP regulations, but does not definitively state that no violation occurred. Nor does the director allege that he was at the store during the compliance visits.

Although the clerk denies knowingly making improper transactions, proof of knowledge is not a requirement for sanctions. Rather, JHM was disqualified for committing violations that involved the "sale of common nonfood items due to carelessness or poor supervision by the firm's ownership

---

any issues not briefed on appeal are waived." (citing *Yohey v. Collins*, 985 F.2d 222, 224–25 (5th Cir. 1993))).

[6] JHM contends that the overwriting of the videos was a result of its belated notice of the violations. However, JHM was notified of the investigation within 30 days of the CI's last visit, which occurred on December 13, 2016. FNS sent a notice letter and report of the investigation to JHM on January 10, 2017.

No. 19-20170

or management."[7] 7 C.F.R. § 278.6(e)(5). And even though the clerk professes to "believe that if the videotapes were available, they would show that [she] did not do the transactions that are being claimed," this speculation is not a direct denial and does not rebut the Government's evidence that the prohibited transactions occurred.[8] *Redmond*, 507 F.2d at 1012 ("[T]he burden of proof . . . is upon the aggrieved food store to establish the invalidity of the administrative action in issue by the preponderance of the evidence."); *see also Irobe v. U.S. Dep't of Agric.*, 890 F.3d 371, 378–79 (1st Cir. 2018) (Because the burden of

---

[7] *Compare* 7 C.F.R. § 278.6(e)(5) (discussing sanctions for violations "due to carelessness or poor supervision"), *with* 7 C.F.R. § 278.6(e)(1)(iii), (2)(v), (3)(vi) (discussing sanctions for "knowingly" engaging in violations).

[8] In accordance with the USDA's investigative practice, the FNS Investigator's Report—submitted under penalty of perjury—documented the date the confidential informant (CI) visited the store; the items purchased; the price of each individual item (if available); and the total deducted from the CI's electronic benefits transfer (EBT) card on each of the six alleged unauthorized transactions. *See Irobe v. U.S. Dep't of Agric.*, 890 F.3d 371, 379 (1st Cir. 2018) ("Congress has expressly authorized consideration of . . . reports of on-site investigations as [a] tool[] in the USDA's efforts to detect fraud." (citing 7 U.S.C. § 2021(a)(2); 7 C.F.R. § 278.6(a))). Additionally, the dates and totals match and are corroborated by the EBT receipts produced by JHM. As recognized by JHM, the receipts "correspond with the transactions set forth in the letter of charges." Thus, the receipts are further evidence the violative transactions occurred.

Deviating from the argument JHM raises on appeal, the dissent largely focuses on the government's use of an unidentified CI to support the sales violations. Central to the dissent's holding is its determination that the "government's proof of violations is CI hearsay." However, because JHM fails to adequately brief on appeal any argument challenging the reliability or admissibility of the CI or agency's investigative report, we need not address this issue. *See United States v. Reagan*, 596 F.3d 251, 254 (5th Cir. 2010) (stating that inadequately briefed arguments in counseled briefs are deemed waived); *United States v. Still*, 102 F.3d 118, 122 n.7 (5th Cir. 1996) (noting that an appellant abandons any issues not raised in his initial brief). JHM does not point to a single discrepancy in the report or investigative process and at no point during the judicial proceedings did JHM seek discovery in an attempt to identify or challenge the CI. *Cf. Betesfa, Inc. v. United States*, 410 F. Supp. 3d 132, 139, 141 (D.D.C. 2019) ("Although an unadorned denial, standing alone, might not be sufficient to withstand a motion for summary judgment, Plaintiffs also reasonably [sought] discovery regarding the comparators that FNS used and the methodology it employed in determining that Plaintiff committed trafficking."). Besides, the FNS investigator states in the report that he accompanied the CI to the "vicinity of the store" and "observed the CI enter . . . [and] depart the subject store" on each visit. The FNS investigator submitted the investigative report under penalty of perjury and confirmed that all information documented in the report was true and correct.

proof is on the store challenging the USDA's determination and the agency produced evidence of SNAP violations, the store "must point to some significantly probative evidence to rebut it (and, thus, fend off summary judgment).").

Having reviewed the record, we conclude that there are no genuine disputes as to any material facts and the Government is entitled to judgment as a matter of law. The district court's judgment is AFFIRMED.

No. 19-20170

STEPHEN A. HIGGINSON, Circuit Judge, dissenting:

Jerusalem Halal Meats, Inc. (JHM) is alleged to have violated Food Stamp Program regulations by selling ineligible items to a government confidential informant ("CI"). The Food and Nutrition Service (FNS) of the United States Department of Agriculture (USDA) issued a report containing the CI's description of his/her ineligible purchases from JHM and disqualified JHM from participating in the Food Stamp Program for one year.

The government alleged violations in an investigative report, and the proof supporting the sales described in that report is from the undisclosed CI. On each occasion, the CI is alleged to have exited the store and told the FNS investigator that he/she purchased ineligible items using an EBT card with SNAP benefits. Notably, the report does not (1) include purchases made by investigating officer himself; (2) indicate the retention or even existence of the ineligible purchased items; or (3) indicate the retention or even existence of contemporaneous receipts for any purchased item.[1] Instead, the alleged violative sales appear to be described only by the CI upon exiting the store, as recorded in the USDA investigative report.

Throughout the administrative process, JHM denied making unlawful sales, and it contested the evidence attributed to the CI. At each stage of the administrative process, the USDA's adverse determinations recognized that JHM made these denials and challenged the statements attributed to the CI. Indeed, in federal court, the magistrate judge acknowledged that the clerk denied the alleged sales, although she later faulted the clerk's denial for not being specific enough. While seeking an administrative appeal challenging disqualification, JHM submitted sworn affidavits from Ms. Mekiya Ali, the

---

[1] Months later, JHM voluntarily provided receipts that corroborate the total amounts of the relevant purchases. However, there is no way to know from the receipts and the total amounts they show whether eligible or ineligible items were purchased.

clerk at cash register #3, and from Mr. Khaled Hamash, a member of the store's management team, in which, on pain of perjury, both denied that Ali sold any ineligible items.[2]

In upholding the disqualification decision of the FNS, the USDA reviewing officer acknowledged two points: (1) the FNS violations were upheld because JHM did not show *by a preponderance of the evidence* that the violation did not occur; and (2) on administrative appeal, her review authority did *not* extend to consideration of JHM's contention that the government relied on inadmissible proof in the form of untested CI hearsay statements.

Thereafter, JHM brought suit in federal district court under 7 U.S.C. § 2023. JHM's complaint is lengthy and explicit, both in its contention that the government's CI allegations are unreliable, and also in emphasizing its own firsthand, contradictory and sworn proof that the ineligible sales did not occur. The district court's review of the administrative action is de novo. *Modica v. United States*, 518 F.2d 374, 376 (5th Cir. 1975). Under this standard, the court may not merely rely on the administrative finding in evaluating JHM's evidence, but instead must "reach its own factual and legal conclusions based on the preponderance of the evidence, and should not limit its consideration to matters previously appraised in the administrative proceedings." *Id.*

I would hold that this record defeats the government's entitlement to summary judgment.[3] At this stage, the only question before the court is

---

[2] Ms. Ali's denial under oath is that: "I have never knowingly sold ineligible items for SNAP benefits." The government notes the offenses are strict liability, implying that Ali's denial is inadequate. However, her affidavit makes clear that she denies making the unlawful sales, that she had been trained not to accept SNAP benefits for ineligible items, and that "[she] told [her] employer to pull the videotapes from the dates and times of the transactions, and they would see that [she] did not do what is being claimed."

[3] It is important to recognize that the review officer's determination was limited to her role: confirming only that JHM's denial affidavits—absent in-person testimony or cross-examination—did not show *by a preponderance of the evidence* that the violations had not occurred. Furthermore, the reviewer acknowledged her lack of authority to discount the

whether there is a disputed issue of material fact. *See Betesfa, Inc. v. United States*, 410 F. Supp. 3d 132, 141 (D.D.C. 2019) (acknowledging that despite the store's ultimate burden of proof to show the invalidity of the administrative determination, "[a]t this stage of the proceeding, . . . the Court's role is limited to determining whether Plaintiffs have marshalled sufficient evidence to give rise to a genuine dispute of material fact"); *McGlory v. United States*, 763 F.2d 309, 311 (7th Cir. 1985) (holding that where there was a "flat denial" of the agency's findings, "the court was required to resolve the conflict in the versions of events" by holding a hearing and making factual findings).

On the one hand, the government has offered its investigator's report of statements from an unidentified CI to support the sales violations. On the other, JHM has offered its sworn witness denials of the same, in two, detailed two-page affidavits, supporting its pleading allegation of no violation. This contradiction equates to a genuine factual dispute for trial.[4] *Betesfa*, 410 F. Supp. 3d at 141 (concluding that an affidavit denying the FNS's allegations, which were based on circumstantial evidence, created a dispute issue of fact that precluded summary judgment). Ms. Ali's affidavit denial provides more than merely "some metaphysical doubt as to the material facts," "conclusory

---

government's hearsay evidence. "Since the procedures followed at the administrative level do not provide for discovery or testing the evidence of the Department of Agriculture by cross-examination, it is particularly important that an aggrieved person who seeks judicial review in a trial de novo not be deprived of these traditional tools unless it is clear that no issue of fact exists." *Saunders v. United States*, 507 F.2d 33, 36 (6th Cir. 1974). These important rights cannot be vindicated at the summary judgment stage.

[4] Other courts have ultimately reversed based on similar evidence when they did not find government witnesses credible. *See, e.g., Sharifi v. United States*, 754 F. Supp. 1543, 1547 (N.D. Ala. 1991) (holding that plaintiff had established the invalidity of the agency finding based on the testimony of an undercover informant who allegedly conducted illegal SNAP transactions because the court did not find the informant's testimony at the federal hearing credible); *Gilmore v. U.S. Dep't of Agric., Food & Nutrition Serv.*, 468 F. Supp. 540, 542 (E.D. Mo. 1979) (overturning the administrative finding that disqualification was warranted because "[t]he testimony of the government's sole alleged witness to the transactions is unreliable, incredible and not worthy of belief").

allegations," "unsubstantiated assertions," or "only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1076 (5th Cir.1994) (citations omitted).

The conflict between the hearsay statements of the CI who is never identified, without evidence that the USDA investigator who prepared the report ever even saw the ineligible items allegedly purchased, and the sworn, contrary statement of the grocery store salesperson, seems to me squarely to implicate a triable issue of fact as to the existence of these violations.[5]

This is especially so because the Supreme Court has made clear that at summary judgment, "the evidence of the non-movant is to be believed, and all justifiable inference are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Whether JHM will ultimately prevail in proving its innocence at trial given its burden of proof under our caselaw, *see Redmond v. United States*, 507 F.2d 1007, 1012 (5th Cir. 1975) (holding that ultimately, after a de novo trial with findings of fact, "unless proven to be invalid, the agency action prevails"); *see also Fells v. United States*, No. 08-C-782, 2010 WL 55844, at *3–*5 (E.D. Wis. Jan. 5, 2010), *aff'd*, 627 F.3d 1250 (7th Cir. 2010) (discussing the legal landscape after *Redmond* and concluding that "the plaintiff must prove by a preponderance of the evidence that the violations found by the Agency did not occur"), is not the issue before us. This court must

---

[5] There are various compendiums of challenges to agency disqualification in federal court. *See, e.g.*, 53 Am. Jur. Proof of Facts 3d 301 (June 2020 update); 120 A.L.R. Fed. 331 (Originally published in 1994); 7 U.S.C. § 2021 Westlaw Notes of Decisions. Reviewing those, I am concerned that the government nearly always provides more robust and admissible evidence of a violation than in this case. *See, e.g.*, *Abdel v. United States*, 670 F.2d 73, 75–76 (7th Cir. 1982) (finding the evidence sufficient *after a hearing* based on testimony and transaction reports where "after leaving the store, [the undercover purchaser] immediately would take her bag of purchases and the change" to the USDA employee, who "would go through the bag . . . and record the items purchased on a Transaction Report form"); *Kingway Supermarkets Inc. v. United States*, 545 F. Supp. 2d 613, 617 (S.D. Tex. 2008) (discussing the reliability of disqualifications "based on an analysis of electronic benefit transfer system data" over a period of months).

review the district court's grant of summary judgment, which requires us to determine whether a material dispute of fact exists as to whether the alleged violations occurred. When the government's proof of violations is CI hearsay, and the plaintiff-retailer's contradictory proof is a sworn affidavit of denial, such a dispute exists.

For these reasons, I dissent.