*Nadia Int'l Mkt. v. United States*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 26th day of April, two thousand seventeen.

PRESENT:   GUIDO CALABRESI,
           DENNY CHIN,
           RAYMOND J. LOHIER, JR.,
                      *Circuit Judges.*
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

NADIA INTERNATIONAL MARKET,
                  *Plaintiff-Appellant*,

                                                    16-364-cv

                  v.

UNITED STATES OF AMERICA,
                  *Defendant-Appellee*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

FOR PLAINTIFF-APPELLANT:        JASDEEP PANNU, Stowe, Vermont.

FOR DEFENDANT-APPELLEE:         MELISSA A.D. RANALDO, Assistant United
                                States Attorney (Nikolas P. Kerest, Gregory L.
                                Waples, Assistant United States Attorneys, *on*

*the brief*), *for* Eugenia A.P. Cowles, Acting United States Attorney for the District of Vermont, Burlington, Vermont.

Appeal from the United States District Court for the District of Vermont (Reiss, *C.J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-appellant Nadia International Market ("Nadia Market") appeals from a judgment of the district court entered December 7, 2015, granting summary judgment in favor of defendant-appellee United States and dismissing Nadia Market's complaint, which sought judicial review of its permanent disqualification from the Supplemental Nutrition Assistance Program ("SNAP"). The district court explained its reasoning in an opinion and order filed December 2, 2015. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

Nadia Market, a small grocery store in Winooski, Vermont, began participating in SNAP in November 2010. In 2012, the Food and Nutrition Service ("FNS"), the agency of the United States Department of Agriculture that administers SNAP, began an investigation into unusual patterns of Electronic Benefit Transfer ("EBT") transactions at Nadia Market. Transaction reports for August through October 2012 identified several types of statistically unusual EBT transactions, including (1) transactions ending in the same cents value (e.g., ".00"), (2) rapid successive purchases

by different households, (3) rapid successive purchases involving the same household, (4) groups of transactions that largely depleted a household's benefits over a period of minutes or hours, and (5) relatively high dollar-value transactions given Nadia Market's size and inventory. As part of the investigation, FNS compared Nadia Market's EBT activity from the three-month period with that of other similarly sized, SNAP-authorized stores within one to two miles of Nadia Market. Following this analysis, a FNS field officer visited Nadia Market to inspect its inventory, stock, layout, and pricing, and spoke with a store clerk.

On November 28, 2012, FNS notified Nadia Market's owner, Yahya Ikhmayyis, that it had identified "clear and repetitive patterns of unusual, irregular, and inexplicable activity," and was considering permanently disqualifying Nadia Market from SNAP. App. 46. In subsequent communications, Ikhmayyis explained that the identified transactions resulted from allowing customers to purchase items on credit and rounding totals to the nearest dollar, in accordance with Iraqi custom. Ikhmayyis also submitted a ledger of credit transactions.

On December 19, 2012, FNS sent a determination letter advising Ikhmayyis that it was charging Nadia Market with "trafficking," or exchanging SNAP benefits for cash. A.R. 177. In the letter, FNS invited Ikhmayyis to provide additional documentation before a final decision was issued, as well as to request imposition of a civil money penalty instead of permanent disqualification. After Ikhmayyis requested

3

review of his case, the Administrative Review Branch (the "Review Branch") provided Nadia Market with another opportunity to submit additional information. Nadia Market submitted an affidavit from Ikhmayyis and an accountant's analysis of its EBT data and credit ledger. The Review Branch nevertheless sustained the recommendation to permanently disqualify Nadia Market from SNAP. FNS also determined that Nadia Market was not eligible for a civil money penalty in lieu of disqualification.

Nadia Market sought review of the agency's decision in the district court pursuant to 7 U.S.C. § 2023(a). After the close of discovery, the district court granted the government's motion for summary judgment. Acknowledging that Nadia Market did not dispute the validity of any of the evidence on which FNS relied, the district court concluded that the government was entitled to judgment as a matter of law because Nadia Market had not established by a preponderance of the evidence that it did not engage in trafficking. The district court further determined that FNS's decision to permanently disqualify Nadia Market from SNAP, rather than impose a civil monetary penalty, was not arbitrary and capricious. This timely appeal followed.

On appeal, Nadia Market argues that (1) the government was not entitled to summary judgment because the EBT transaction data was insufficient to establish trafficking and support disqualification, and (2) FNS's decision to permanently disqualify Nadia Market from participating in SNAP rather than issue a civil monetary penalty was arbitrary and capricious. We review a grant of summary judgment *de novo*,

4

"constru[ing] the evidence and draw[ing] all reasonable inferences in the light most favorable to the non-moving party." *Proctor v. LeClaire*, 846 F.3d 597, 607 (2d Cir. 2017). We affirm when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id*. (citations and internal quotation marks omitted).

The Secretary of Agriculture may permanently disqualify any approved retail food store from participation in SNAP upon "the first occasion or any subsequent occasion of a disqualification based on the purchase of coupons or trafficking in coupons or authorization cards by a retail food store." 7 U.S.C. § 2021(b)(3)(B). Section 2021(b)(3)(B) grants the Secretary discretion to impose a civil monetary penalty in lieu of permanent disqualification for trafficking "if the Secretary determines that there is substantial evidence that such store or food concern had an effective policy and program in effect to prevent violations of the chapter and the regulations." *Id.*

Upon disqualification, a retail food store operator may obtain judicial review by way of "a trial *de novo* . . . in which the court shall determine the validity of the questioned administrative action in issue." 7 U.S.C. § 2023(a)(13), (15).[1] In

---

[1] The district court held that Nadia Market bore the burden of proving the invalidity of the agency action, a determination Nadia Market disputes on appeal. Section 2023 does not clearly specify which party bears the burden of proof in the review of a disqualification action. Although we have not yet addressed the issue, other circuits have ruled that the party challenging the agency action bears the burden of proof. *See Fells v. United States*, 627 F.3d 1250, 1253 (7th Cir. 2010) (collecting cases). We need not reach the issue here because, even assuming

5

conducting its review, "the district court 'must reach its own factual and legal conclusions based on the preponderance of the evidence, and should not limit its consideration to matters previously appraised in the administrative proceedings.'" *Ibrahim v. United States*, 834 F.2d 52, 53-54 (2d Cir. 1987) (quoting *Modica v. United States*, 518 F.2d 374, 376 (5th Cir. 1975)). When reviewing the sanction imposed by FNS, we assess "whether the Secretary's action was arbitrary or capricious, i.e., whether it was 'unwarranted in law or without justification in fact.'" *Willy's Grocery v. United States*, 656 F.2d 24, 26 (2d Cir. 1981) (quoting *Cross v. United States*, 512 F.2d 1212, 1218 (4th Cir. 1975) (en banc)).

Here, the evidence in the record was sufficient to establish as a matter of law that Nadia Market engaged in trafficking of SNAP benefits and that, as a result, its disqualification from SNAP was appropriate. FNS identified over two hundred statistically unusual EBT transactions, the timing and amount of which demonstrated that SNAP benefits were not being redeemed for items sold at Nadia Market. The record indicates that Nadia Market lacked the high-priced inventory or checkout mechanisms needed to process sales at the speed and total dollar value indicated on the transaction reports. In addition, a comparison of Nadia Market's inventory and redemption activity with that of similarly situated SNAP-authorized retailers in

the Secretary bears the burden of proof, a reasonable factfinder could conclude only that Nadia Market had engaged in the trafficking of SNAP benefits.

6

Winooski showed that Nadia Market's average transaction and monthly redemption amounts dwarfed that of nearby stores selling comparable items at similar prices.

Nadia Market does not dispute the accuracy of the transaction reports, nor does it provide plausible alternative explanations for the suspect transactions. Although Nadia Market claimed that the suspect transactions were the result of customers buying goods on credit, its accountant was able to identify only three possible matches to the store's credit ledger and suggested that timing of the transactions appeared problematic. Nadia Market's claim that FNS ignored certain probative evidence is misplaced, as the district court engaged in a *de novo* review of the evidence. Moreover, the argument is belied by the final decision of the Review Board, which expressly referenced the credit ledger and the investigating officer's observations and interactions from his visit. Furthermore, it was entirely proper for FNS to rely on transaction data alone in making its trafficking determination. *See* 7 U.S.C. § 2021(a)(2) (allowing FNS to disqualify a participating store based on "on-site investigations, inconsistent redemption data, or evidence obtained through a transaction report under an electronic benefit transfer system"). Accordingly, drawing all inferences in Nadia Market's favor, a reasonable factfinder could conclude only that the agency's trafficking determination was valid.

We also hold that FNS's decision to permanently disqualify Nadia Market rather than issue a civil monetary penalty was neither arbitrary nor capricious.

7

Although FNS advised Nadia Market of its option to request a monetary penalty and establish its eligibility for one, Nadia Market never made such a request to the agency. Furthermore, there is no evidence in the record to suggest that Nadia Market was eligible for a civil monetary penalty. *See* 7 C.F.R. § 278.6(i) (giving FNS discretion to impose a penalty in lieu of permanent disqualification for trafficking if store "timely submits to FNS substantial evidence which demonstrates that [it] had established an effective compliance policy and program to prevent violations of [SNAP]").

Finally, based on our independent, *de novo* review of the record, we find no merit in Nadia Market's arguments that the administrative process violated its due process rights.

We have considered Nadia Market's remaining arguments and conclude they are without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk